# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| FELDMAN'S MEDICAL CENTER PHARMACY, INC., and PHARMACY MANAGEMENT ASSOCIATES, LLC, | ) ) ) |
| | ) |
| Plaintiffs, | ) Civil Action No. WDQ-12-613 |
| | ) |
| v. | ) |
| | ) |
| CAREFIRST, INC., INDEPENDENCE BLUE CROSS, QCC INSURANCE COMPANY, THE BLUE CROSS AND BLUE SHIELD ASSOCIATION, and JOHN DOES 1 – 10, | ) ) ) ) |
| | ) |
| Defendants. | ) |

---

## PLAINTIFFS' MEMORANDUM OF LAW
## IN SUPPORT OF MOTION FOR REMAND

Thomas O'Toole
Neal C. Baroody
BAROODY & O'TOOLE
201 N. Charles Street, Suite 2102
Baltimore, Maryland 21201
(410) 539-8412 (telephone)
(410) 539-8411 (telecopier)

Anthony Paduano
PADUANO & WEINTRAUB LLP
1251 Avenue of the Americas
Ninth Floor
New York, New York 10020
(212) 785-9100 (telephone)
(212) 785-9099 (telecopier)

## Table of Contents

TABLE OF AUTHORITIES ................................................................................ii

Preliminary Statement ............................................................................... 1

FACTUAL BACKGROUND ........................................................................... 3

    The FMCP ERISA Case ........................................................................... 5

    Templin ..................................................................................................... 7

ARGUMENT ................................................................................................. 8

    REMAND IS APPROPRIATE BECAUSE THERE IS NO FEDERAL
    QUESTION JURISDICTION ...................................................................... 8

        A. General Considerations for Removal Under Federal Question
           Jurisdiction ...................................................................................... 9

        B. ERISA Does Not Completely Preempt the FAC .................................. 9

           1. Plaintiffs Do Not Have Standing to Bring an ERISA Claim ........... 11

           2. No Claim Asserted in the First Amended Complaint is Within
              the Scope of § 502(a) ............................................................ 16

           3. Plaintiffs' Claims Are Capable of Resolution Without
              Interpretation of An ERISA Plan .............................................. 19

    CONCLUSION............................................................................................ 22

## Table of Authorities

**Cases**

Darcangelo v. Verizon Comm'cns, Inc.,
292 F.3d 181 (4th Cir. 2002) ............................................................... 10, 18

District of Columbia v. Greater Washington Bd. of Trade,
506 U.S. 125 (1992) ..................................................................................... 10

Dixon v. Coburg Dairy, Inc.,
369 F.3d 811, 815 -816 (4th Cir. 2004)…..................................................... 8

Djak v. Target My Pay & Benefits,
2011 WL 4571667 (D. Md. Sept. 29, 2011) ............................................. 9, 20

Drs. Reichmister, Becker, Smulyan and Keehn, P.A. v. United HealthCare of Mid-
Atlantic, Inc.,
93 F. Supp. 2d 618 (D. Md. 2000) ................................................................ 12

Feldman's Medical Center Pharmacy, Inc. v. CareFirst, Inc.,
2011 WL 5433754 (D. Md. Nov. 9, 2011) ........................................... 6, 14, 15

Great-West Life & Annuity Ins. Co. v. Information Systems & Networks Corp.,
523 F.3d 266, 271 (4th Cir. 2008)................................................................ 19

Hall v. St. Mary's Seminary & Univ.,
608 F. Supp. 2d 679 (D. Md. 2009),
aff'd 378 F. App'x 326 (4th Cir. 2010) .................................................... 17, 18

Ingersoll-Rand Co. v. McClendon,
498 U.S. 133 (1990) ..................................................................................... 10

LeBlanc v. Cahill,
153 F.3d 134 (4th Cir. 1998). .................................................................... 9, 10

Lontz v. Tharp,
413 F.3d 435 (4th Cir. 2005) ............................................................... 8, 9, 10

Makar v. Health Care Corp. of Mid-Atlantic (CareFirst),
872 F.2d 80 (4th Cir. 1989) ..................................................................... 21n

Marks v. Watters,
322 F.3d 316 (4th Cir. 2003) ............................................................. 20, 21

Memorial Hosp. Sys. v. Northbrook Life Ins. Co.,
904 F.2d 236 (5th Cir.1990) ...................................................................... 13

Misic v. Building Service Employees Health and Welfare Trust,
789 F.2d 1374 (9th Cir. 1986) .................................................................... 12

Mulcahey v. Columbia Organic Chemistry,
29 F.3d 148 (4th Cir. 1994) .......................................................................... 8

Panagodimos v. Contemporary Nursing Solutions, Inc.,
2012 WL 832664 (D. Md. Mar. 8, 2012) ............................................... 10, 10n

Parrino v. FHP, Inc.,
146 F.3d 699 (9th Cir. 1998) ...................................................................... 21

Pegram v. Herdrich,
530 U.S. 211 (2000) ................................................................................. 21n

Pilot Life Ins. Co. v. Dedeaux,
481 U.S. 41 (1987) ................................................................................... 21n

Sonoco Prods. Co. v. Physicians Plan, Inc.,
338 F.3d 366 (4th Cir. 2003) ........................................................... 10, 18, 19

The Meadows v. Employers Health Ins.,
47 F.3d 1006 (9th Cir.1995) ...................................................................... 13

Yarde v. Pan American Life Ins.,
1995 WL 539736 (4th Cir. 1995) ............................................................... 12

**Other Authorities**

28 U.S.C. § 1441 ........................................................................................ 8

28 U.S.C. §1332 .................................................................................... 8, 11

29 U.S.C. § 1001 ........................................................................................ 9

29 U.S.C § 1002 ................................................................... 11, 11n, 12, 12n

29 U.S.C. § 1132 ............................................................................ 8n, 10, 11

iii

Plaintiffs Feldman's Medical Center Pharmacy, Inc. ("Feldman's") and Pharmacy Management Associates, LLC ("PMA" and, together with Feldman's, "Plaintiffs"), by and through their undersigned counsel, respectfully submit this Memorandum of Law in support of their Motion for Remand.

## Preliminary Statement

This case is about a conspiracy to destroy Plaintiffs' business, carried out by Defendants CareFirst, Inc. ("CareFirst"), Independence Blue Cross ("IBC"), QCC Insurance Company ("QCC") (IBC and QCC are collectively the "IBC Defendants"), and the Blue Cross and Blue Shield Association (the "BCBSA"). As is asserted in the First Amended Complaint (the "FAC")[1], the methods and goals of the scheme were to: (a) drive Feldman's out of business, (b) direct the hemophilia patients Feldman's served away from insurance plans offered by BCBSA licensees, (c) purge hemophiliacs from the rosters of Defendants' insureds and push Feldman's hemophilia patients to government programs such as Medicare and Medicaid, and/or (d) steer Feldman's hemophilia patients to large pharmacies and pharmacy benefit managers from whom Defendants receive a financial benefit or in whom Defendants have a financial interest. FAC at ¶¶ 2, 29, and 33.

These allegations have nothing to do with an ERISA plan, a particular claim, or a particular patient. Despite this, Defendants now seek to turn ERISA and the policies underlying it on their head by urging this Court to conclude that the

---

[1]     A copy of the First Amended Complaint is attached to the Declaration of Anthony Paduano dated April 23, 2012 ("Paduano Dec.") as Exhibit A.

mere reference to unpaid claims that were covered by ERISA plans and that were implicated in two prior cases -- one of which is pending before this Court on the issue of attorneys' fees and which Feldman's won -- somehow preempts any other independent claim that Plaintiffs have against Defendants.

Defendants' position fails both as a matter of law and of fact. Despite Defendants' transparent and convoluted arguments, PMA is not an assignee of patients and Defendants do not contend otherwise. Moreover, Feldman's, who maintained the prior suits as assignees of patients, does not do so here. Indeed, Defendants do not argue that the patients whose claims were at issue in the prior actions would have standing to bring the claims asserted before this Court nor can they. Rather, Plaintiffs have independent standing to maintain the instant action. Accordingly, the standing issues alone preclude a determination that the claims are preempted by ERISA.

Moreover, Plaintiffs' detailed FAC clearly asserts myriad allegations having nothing to do with the failure to pay benefits alleged in the prior actions. The claims asserted in the complaint, all of which relate to the intentional destruction of Plaintiffs' businesses, have no connection to any employee benefit plan established pursuant to ERISA.

In short, the FAC does not and could not assert any federal claims, therefore precluding a finding of federal question jurisdiction. Accordingly, the case must be remanded to the Maryland State Court.

## FACTUAL BACKGROUND

The facts of the case are contained in the FAC and will not be repeated herein except as relevant to the instant motion.  In addition to the facts in the FAC, certain facts relating to the prior cases upon which Defendants based their removal are relevant here.

The FAC seeks damages as a result of Defendants' concerted and intentional efforts to destroy Plaintiffs' business by, among other things, driving Feldman's customers away, impugning Feldman's reputation within the hemophilia community and with regulators and law enforcement, and wrongfully withholding millions of dollars from Feldman's for medicine it purchased and dispensed. Specifically, the FAC alleges:

- Defendants put profits and executive compensation above their responsibility to their insureds and vendors and participated in a scheme to: (a) drive Feldman's out of business, (b) direct the hemophilia patients Feldman's served away from insurance plans offered by BCBSA licensees, (c) purge hemophiliacs from the rosters of their insureds and push Feldman's hemophilia patients to government programs such as Medicare and Medicaid, and/or (d) steer Feldman's hemophilia patients to large pharmacies and pharmacy benefit managers from whom Defendants receive a financial benefit or in whom Defendants have a financial interest. [FAC ¶¶ 2, 126, 340-42]

- IBC's investigators intimidated Feldman's patients by, among other things, conducting interviews of numerous Feldman's patients and employees, and other hemophilia patients that were not Feldman's patients.  At those interviews, CareFirst, IBC and the BCBSA made false and defamatory statements about Feldman's and the ways it conducted its business. [FAC ¶¶ 141, 261]

3

- Defendants were assisted in their schemes by representatives of pharmacy benefit managers ("PBMs") who were direct competitors of Feldman's.   [FAC ¶260]

- In addition to the defamation of Feldman's at patient interviews, CareFirst, IBC, the BCBSA and the PBMs attempted to steer Feldman's customers to use the specialty pharmacy services of the PBMs, from whom CareFirst received better "pricing" in the form of "discounts," or as they are more commonly known, kickbacks. [FAC ¶262]

- CareFirst, IBC, and the BCBSA left sales literature for their preferred PBMs with Feldman's patients after interviewing such patients and making serious, unfounded accusations about Feldman's and "recommended" that patients consider a switch to the preferred PBM. [FAC ¶ 263]

- CareFirst and the BCBSA, in searching for a way to save on the costs associated with covering expensive treatments, decided to destroy Feldman's, thereby forcing patients to get their medicine from pharmacies that offered better financial terms to CareFirst.  [FAC ¶ 166]

- CareFirst regularly told fellow BCBSA licensees and law enforcement that Feldman's was involved in "fraud," even though there was no evidence of fraud.  [FAC ¶ 186]

- Jamie Hanson, an investigator for CareFirst, spread a rumor about Feldman's supposed bankruptcy.   [FAC ¶187]

- Defendants tried to co-opt federal and state regulators and law enforcement to investigate Feldman's, even though Defendants knew their allegations were baseless. [FAC ¶¶ 189, 190 – 91, 196, 198 – 99]

- CareFirst's defamed Feldman's, resulting in the loss of Feldman's business relationships with IBC, other BCBSA licensees, other non-BCBSA insurance companies, and with potential patients. [FAC ¶ 202]

- As a result of CareFirst's, IBC's, and the BCBSA's actions, numerous Feldman's patients switched to another pharmacy. [FAC ¶264]

4

- This departure of customers had catastrophic implications for Feldman's business, ultimately causing Feldman's to default on its bank loans. [FAC ¶265]

- Feldman's was also unable to acquire any new patients, as rumors of its purported criminal activity and financial distress spread like wildfire through the hemophilia community.  [FAC ¶310]

- Ultimately, PMA was forced to sell Feldman's operating assets for considerably less than fair market value. [FAC ¶203]

Despite the foregoing, Defendants attempt to obfuscate this action's lack of any relationship to ERISA by reference to <u>Templin v. Independence Blue Cross</u>, Civil Action No. JHS-09–4092 (the "Templin Case") and <u>Feldman's Medical Center Pharmacy, Inc. v. CareFirst, Inc</u>., Civil Action No. SKG–10–254 (the "FMCP ERISA Case"), two prior actions to which Feldman's was a party brought on behalf of hemophilia patients seeking payment of long overdue benefits for factor drugs dispensed to patients insured by BCBSA licensees.

### The FMCP ERISA Case

In June 2009, Feldman's filed a lawsuit against Defendant CareFirst in the Circuit Court for Baltimore County, seeking payment of nearly $2 million in claims for life-saving Factor drugs dispensed to hemophiliac patients insured by CareFirst or insured by other licensees of BCBSA and for whom CareFirst acted as the payment "gatekeeper" under the rules of the BlueCard system in which the BCBSA's licensees participated (Paduano Dec. ¶ 8, Ex. B).  Those claims had been unpaid for significant lengths of time, some for well over one year at the time the lawsuit was filed.  Feldman's 2009 lawsuit against CareFirst was initially filed in

the Circuit Court for Baltimore County, but on February 1, 2010, CareFirst removed the case to this Court (Paduano Dec. ¶ 9, Ex. C).

On March 3, 2010, Feldman's moved the Court to remand the case to the Circuit Court for Baltimore County (Paduano Dec. ¶ 10, Ex. D).  CareFirst opposed Feldman's motion, arguing that although Feldman's asserted state law claims in its Complaint, ERISA preempted the state law claims because Feldman's also asserted an alternate theory of recovery based on general assignments of benefits Feldman's had received from its patients.   The legal effect of the assignments was to put Feldman's in the patients' shoes for purposes of recovery of the unpaid claims (Paduano Dec. ¶ 11).   The Court agreed with CareFirst, finding that the only reason the lawsuit for unpaid claims was removable to federal court was because Feldman's asserted a theory of recovery based on the patient assignments.   The Court therefore denied Feldman's Motion for Remand and retained jurisdiction over the case (Paduano Dec. ¶ 12, Ex. F).

CareFirst ultimately agreed to pay the claims in the FMCP ERISA Case in September 2010 and paid the claims some time thereafter.   The Court then granted in part and denied in part Feldman's motion for summary judgment and denied in part CareFirst's motion for summary judgment, granting prejudgment interest to Feldman's, in a proceeding that was exclusively limited to the prejudgment interest issue. See Feldman's Medical Center Pharmacy, Inc. v. CareFirst, Inc., 2011 WL 5433754, *1 (D. Md. Nov. 9, 2011).   The case remains

*sub judice* on the issue of Feldman's application for attorneys' fees and costs (Paduano Dec. ¶ 14).

<u>Templin</u>

On September 8, 2009, Feldman's, along with FCS Pharmacy LLC ("FCS") and two individuals who were participants in an ERISA plan – Christopher Templin and Viola Hendrick – filed a lawsuit against IBC, QCC, and CareFirst in the United States District Court for the Eastern District of Pennsylvania (Paduano Dec. ¶ 15). In that Complaint, Feldman's and its co-plaintiffs asserted federal question jurisdiction based on the participation in the lawsuit of the two ERISA plan participants – one who was a patient of Feldman's and/or FCS and other who was the guardian and caregiver of a patient of Feldman's and/or FCS – as well as based on the assignments of benefits Feldman's and FCS had received from the patients whose claims were at issue in that case (Paduano Dec. ¶ 16).

CareFirst, IBC and QCC asserted that Feldman's and FCS did not have standing to bring an ERISA claim because the assignments from the patients were invalid under anti-assignment clauses in the insurance contracts (Paduano Dec. ¶ 17). In October 2010, CareFirst, IBC and QCC agreed to pay all the outstanding claims (Paduano Dec. ¶ 18). After filing a Second Amended Complaint in November 2010, IBC and QCC again filed motions to dismiss. The court dismissed the Complaint as moot because all the claims had been paid. The Court also dismissed the claims against CareFirst <u>sua</u> <u>sponte</u> despite the fact that CareFirst had answered the Second Amended Complaint and had not served a motion to

dismiss (Paduano Dec. ¶ 19, Ex. I).   Subsequent to the dismissal, both Plaintiffs and Defendants IBC and QCC filed cross-motions for, <u>inter</u> <u>alia</u>, awards of attorneys' fees and costs.   The Court denied those motions (Paduano Dec. ¶ 20).   Cross-appeals of these various orders are currently pending before the Third Circuit Court of Appeals (Paduano Dec. ¶ 20).

<u>**ARGUMENT**</u>

**REMAND IS APPROPRIATE BECAUSE
<u>THERE IS NO FEDERAL QUESTION JURISDICTION</u>**

Removal of a state court action is permitted only if the federal court possesses original jurisdiction over the case.   <u>See</u> 28 U.S.C. § 1441; <u>Lontz v. Tharp</u>, 413 F.3d 435, 439 (4th Cir. 2005).   As the parties seeking removal, Defendants have the burden to establish with certainty that the instant action qualifies for federal jurisdiction.   <u>See</u> <u>Mulcahey v. Columbia Organic Chemistry</u>, 29 F.3d 148, 151 (4th Cir. 1994).   Any doubt weighs against removal and in favor of a remand to state court.   <u>Dixon v. Coburg Dairy, Inc.</u>, 369 F.3d 811, 815 - 816 (4th Cir. 2004)  (holding that federalism considerations enjoin courts to resolve doubts against party seeking removal).

Plaintiffs' FAC does not raise any federal question.   Therefore the Court does not have jurisdiction over this matter and must remand it to State Court.[2]

---

[2]  Defendants do not allege, nor can they, that diversity jurisdiction exists pursuant to 28 U.S.C. §1332.

A.      **General Considerations for Removal Under Federal Question Jurisdiction**

Removal based on federal question jurisdiction is generally appropriate only if the plaintiff's complaint raises issues of federal law.  Lontz, 413 F.3d at 439).  "[S]tate law complaints usually must stay in state court when they assert what appear to be state law claims." Djak v. Target My Pay & Benefits, 2011 WL 4571667, *1 (D. Md. Sept. 29, 2011) (Quarles, J.) (quoting Lontz, 413 F.3d at 440).  A narrow exception to this rule exists in the event of complete preemption of state law claims by federal law.  Under the complete preemption doctrine, "if the subject matter of a putative state law claim has been totally subsumed by federal law … then removal is appropriate."  Lontz, 413 F.3d at 441.

B.      **ERISA Does Not Completely Preempt The FAC**

ERISA's main objective is to "protect … the interests of participants in employee benefit plans and their beneficiaries, … by establishing standards of conduct, responsibility, and obligation for fiduciaries … and … by providing for appropriate remedies, sanctions, and ready access to the Federal courts." 29 U.S.C. § 1001(b); LeBlanc v. Cahill, 153 F.3d 134, 147 (4th Cir. 1998).

In enacting ERISA's preemption provision, Congress intended:

> to ensure that plans and plan sponsors would be subject to a uniform body of benefits law; the goal was to minimize the administrative and financial burden of complying with conflicting directives among States or between States and the Federal Government …, [and to prevent] the potential for conflict in substantive law … requiring the tailoring of plans and employer conduct to the peculiarities of the law of each jurisdiction.

9

LeBlanc, 153 F.3d at 147 (quoting Ingersoll-Rand Co. v. McClendon, 498 U.S. 133, 142 (1990)) (alteration and elipses in original).

ERISA's civil enforcement provision, 29 U.S.C. § 1132(a) (ERISA § 502(a)), completely preempts state law claims where specific circumstances are met and converts these state claims into federal claims under § 502." LeBlanc, 153 F.3d at 147; Darcangelo v. Verizon Comm'cns, Inc., 292 F.3d 181, 187 (4th Cir. 2002) (internal citations and quotation marks omitted). ERISA preemption, however, is not unbounded.  ERISA does not preempt when there is only a "tenuous, remote, or peripheral" connection with covered plans.    District of Columbia v. Greater Washington Bd. of Trade, 506 U.S. 125, 130 (1992).  Indeed, a state claim is preempted by § 502 only if: (1) the plaintiff has standing under § 502(a); (2) the claim could be brought under § 502(a); and (3) the claim is not capable of resolution without interpretation of the ERISA plan. See Sonoco Prods. Co. v. Physicians Plan, Inc., 338 F.3d 366, 372 (4th Cir. 2003); Panagodimos v. Contemporary Nursing Solutions, Inc., 2012 WL 832664 at *2 (D. Md. Mar. 8, 2012) (Quarles, J.).[3]

Defendants, who bear the burden of establishing each of these elements (See Lontz, 413 F.3d at 441), simply cannot do so.  Indeed, Plaintiffs'

---

[3]     In Panagodimos, this Court denied a motion for remand where Plaintiff alleged violations of the Maryland Wage Payment and Collection Law and various state claims based upon her employers' failure to contribute the promised amount to the cost of the employee's health care group plan.  In refusing to order remand, the Court relied upon the fact that Plaintiff was an ERISA plan participant (and therefore had standing) seeking restitution of overpayments under §502(a)(3) (B) (such that the claim could be brought under 502(a)).  Id. at *2.  As set forth at pages 11 – 16, infra, the present action meets neither of these criteria.

claims are premised upon a coordinated scheme engaged in by and among each of the Defendants beginning, unbeknownst to Plaintiffs, in as early as 2007 (FAC ¶¶ 147 – 50).   This synchronized effort, which took the form of intimidation of customers (FAC ¶¶ 141, 260 – 64, 336), destruction of Plaintiffs' reputation through attempts to co-opt federal and state regulators and law enforcement (FAC ¶¶ 162 – 63, 189, 196, 198) and financial strong-arming by refusal to pay claims that only years later were paid (FAC ¶¶ 142 – 43, 170 – 71) ultimately resulted in the destruction of Plaintiffs' business (FAC ¶¶ 144 – 45, 202 – 03, 265 – 74).   Defendants' claim that these allegations are somehow pre-empted by ERISA is wrong as a matter of fact and of law.

### 1.   Plaintiffs Do Not Have Standing to Bring an ERISA Claim

Section 502(a) enumerates the persons empowered to bring a civil action under ERISA's civil enforcement mechanism.   Other than the Secretary of the United States Department of Labor, the list includes "participants," "beneficiaries," and "fiduciaries."   29 U.S.C. § 1132(a).

"Participant" is defined by ERISA as:

> any employee or former employee of an employer, or any member or former member of an employee organization, who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employer or members of such organization, or whose beneficiaries may be eligible to receive any such benefit.

29 U.S.C. § 1002(7).[4]

In connection with the standing requirement, Defendants engage in a tortured and incorrect analysis based solely upon patient assignments that were proffered during the course of the Templin Case and the FMCP ERISA Case. Reliance on the assignments for standing, however, underscores the weakness of Defendants' argument.  Indeed, the patients at issue in the Templin Case and the FMCP ERISA Case do not have standing to bring the destruction of business claims asserted in the FAC.  It follows, therefore, that Plaintiffs could not bring such claims by virtue of the patient assignments but based upon an independent duty owed to them by Defendants.   See Yarde v. Pan American Life Ins., 1995 WL 539736, *4 (4th Cir. 1995) (citing Misic v. Building Service Employees Health and Welfare Trust, 789 F.2d 1374, 1378 (9th Cir. 1986) (an assignment cannot create rights in the assignee not held by the assignor)); Drs. Reichmister, Becker, Smulyan and Keehn, P.A. v. United HealthCare of Mid-Atlantic, Inc., 93 F. Supp. 2d 618 (D. Md. 2000) (Blake, J.).

In Drs. Reichmister, Becker, Smulyan and Keehn, P.A., supra, plaintiff sued the patient's ERISA plan for negligently misrepresenting that the patient had insurance coverage.  Plaintiff verified the coverage prior to service but the insurer later denied the claim, asserting that the patient actually was not covered by the

---

[4]     "Beneficiary" is defined by ERISA as "a person designated by a participant, or by the terms of an employee benefit plan, who is or may become entitled to a benefit thereunder." 29 U.S.C. § 1002(8). "Fiduciary" is defined as a person who exercises discretionary authority or control regarding the management of an ERISA plan. 29 U.S.C § 1002(21).

insurance plan at the time.  Insurer removed on the grounds that the claims were

preempted by ERISA arguing that plaintiff stood in the patient's shoes by virtue of

the assignment; therefore any claims asserted by plaintiff were ERISA claims.

> The Court granted plaintiff's motion to remand stating:

> While it is true that state law claims brought in a plaintiff's capacity as an assignee are preempted, see Memorial Hosp. Sys. v. Northbrook Life Ins. Co., 904 F.2d 236, 250 (5th Cir.1990) (agreeing that claims brought as an assignee of a plan participant's benefits are preempted by ERISA), this exclusive remedy is limited to situations in which the plaintiff sues in its capacity as assignee. See, e.g., The Meadows v. Employers Health Ins., 47 F.3d 1006, 1008, 1011 (9th Cir.1995) (upholding a district court's remand of assignee's negligent misrepresentation, estoppel, and breach of contract claims when the assignee sued only in its capacity as a third party health care provider).

> *   *   *

> In its complaint, its motion for remand, and its reply, Plaintiff in this case takes pains to characterize its action as a common law claim for negligent misrepresentation, rather than as a suit for benefits under the plan. . .  At no point does Plaintiff frame its action around its status as an assignee. Therefore, as the Ninth Circuit held in The Meadows, Plaintiff's status as assignee does not automatically bring it within ERISA's enforcement scheme.  Rather, preemption hinges on whether the state law claim relates to the terms of the ERISA plan.

Id. at 620.

Accordingly, because Plaintiffs here would not have standing to bring these claims by virtue of the patient assignments, ERISA does not completely preempt the FAC.[5]

Second, Defendants conveniently ignore the positions previously taken by them, the plain facts of each of the prior cases and the opinion issued by this Court in the FMCP ERISA Case.  In the FMCP ERISA Case, CareFirst asserted that removal was proper, and the Court had jurisdiction over Feldman's claims, because Feldman's claims for reimbursement were based, at least in part, on assignments of benefits Feldman's had obtained from the patients whose benefits were at issue in that case.  See CareFirst Notice of Removal, dated February 1, 2010, ¶ 13, attached to Paduano Decl. as Exhibit C ("In short, because Feldman's attempts to assert its supposed rights as an assignee of ERISA claims, the case centers on the enforcement of benefits due under an employee welfare benefits plan").  This Court determined that Feldman's acquired standing under § 502(a) solely as a result of the assignments of benefits from its patients.  See Feldman's Med. Ctr. Pharmacy, Inc. v. CareFirst, Inc., 723 F. Supp. 2d 814, 819 (D. Md. 2010).   And, in its Opposition to Feldman's Motion for Remand, CareFirst repeatedly cited the assignments as the basis for ERISA preemption and federal court jurisdiction (See Paduano Dec. ¶ 11, Ex. E, CareFirst's Opposition to Motion for Remand, dated March 17, 2010, at 4 – 5, 7 – 8 ("the Court has jurisdiction under the complete

---

[5]     Defendants do not and cannot assert how the assignments have any bearing on Plaintiffs' relationship with Defendant BCBSA, a national company comprised of independent Blue Cross Blue Shield licensees (FAC ¶4) with whom neither Plaintiffs, nor any of the claims at issue in the prior actions, have any relationship.

preemption doctrine of [ERISA] . . . over Plaintiffs' claim for payment as a non-participating provider because the claim is based on the assignment of ERISA rights"), and 9 – 11) and <u>conceded</u> in its Opposition that but for the assignments, there was no federal question or ERISA preemption even though that case was explicitly about payments of claims for benefits:

> The primary thrust of Plaintiff's Motion is a simple one: Plaintiff does not rely on the Assignments. If, given the record above, the Court finds that Plaintiff is correct, CareFirst concedes that the Court should remand the case.

<u>Id</u>.

In its Memorandum Opinion on Feldman's Motion for Remand, this Court held that "<u>to the extent that FMCP is suing as the Does' assignee</u>, its claims are preempted." <u>Feldman's</u>, 723 F. Supp. 2d at 819 (emphasis added).  The Court further held that "[t]o the extent that FMCP's claims are based on the Does' assignments of benefits, those claims will require interpretation of the Does' ERISA plans" and therefore were preempted by ERISA.  <u>Id</u>. at 821.  In addressing the timeliness of CareFirst's Notice of Removal, the Court was equally clear: "The grounds for removal only appeared when FMCP filed its opposition to the interpleader, attached the Does' assignments, and asserted an entitlement to recovery under them."  <u>Id</u>. at 822.  In other words, if there were no assignments, or if Feldman's did not assert a theory of recovery based on the assignments, there would be no ERISA preemption and no grounds for federal court jurisdiction.

CareFirst, along with the IBC Defendants and the BCBSA, now ignores its assertions in the FMCP ERISA Case and the Court's Memorandum Opinion in

that case and argues that there is ERISA preemption and federal court jurisdiction even in the absence of the assignments.  This is directly contrary to CareFirst's assertions in the FMCP ERISA Case, this Court's Opinion in that case, and the plain meaning of the words in § 502 of ERISA.

Similarly, in the Templin Case, IBC and CareFirst each argued that the pharmacy plaintiffs had no standing because the only ground for standing was the assignments of benefits, and IBC and CareFirst asserted that the assignments were invalid because of anti-assignment clauses in the relevant contracts. See Brief in Support of CareFirst's Motion to Dismiss First Amended Complaint at 6–7, attached to the Paduano Decl. as Exhibit H; CareFirst Opposition to Remand in the FMCP ERISA Case, p. 11, attached to Paduano Decl. as Exhibit E.  In other words, if there is no assignment of benefits, there is no ERISA standing.  Defendants have given no reason why this case – where there are no assignments and Plaintiffs, who are not ERISA participants or beneficiaries, are suing for harm caused directly to them, not to the patients – should be treated differently.

> **2.    No Claim Asserted in the First Amended Complaint is Within the Scope of § 502(a)**

In addition to Plaintiffs' lack of ERISA standing, ERISA preemption also fails because the FAC does not assert any claim within the scope of § 502(a).

Defendants assert that Plaintiffs' claims in the FAC are based on "the purportedly improper and/or untimely processing of Feldman's claims for reimbursement for providing factor medication to ERISA participants under an ERISA plan administered and underwritten by the IBC Defendants."  This is a gross

16

misreading of the FAC.  The claims in the FAC are clearly based on Defendants' conspiracy to:

> (a) drive Feldman's out of business, (b) direct the hemophilia patients Feldman's served away from insurance plans offered by BCBSA licensees, (c) purge hemophiliacs from the rosters of their insureds and push Feldman's hemophilia patients to government programs such as Medicare and Medicaid, and/or (d) steer Feldman's hemophilia patients to large pharmacies and pharmacy benefit managers from whom Defendants receive a financial benefit or in whom Defendants have a financial interest.

FAC at p. 2 and ¶¶ 7, 114, 126, 132 and 349.

Defendants assert that Plaintiffs have "carved out" particular causes of action from the same transaction and asserted them in this case in an attempt to avoid federal jurisdiction.  In support of their assertion, Defendants cite Hall v. St. Mary's Seminary & Univ., 608 F. Supp. 2d 679 (D. Md. 2009) (Legg, J.), aff'd 378 F. App'x 326 (4th Cir. 2010).  Hall, however, is not an ERISA case and was not removed to federal court from state court.  Instead, Hall is a case in which the Court considered the elements of *res judicata*, including the final element, whether "the claim presented in the new litigation arises out of the same transaction or series of transactions as the claim resolved by the prior judgment." Id. at 685.  In concluding that Plaintiff's claims arose out of the same transaction, the Hall Court noted:

> In this case, all the facts asserted in the Federal Complaint were, or could have been, asserted in the State Complaint. Although the specific examples of harassment are not itemized in the Federal Complaint, both pleadings depend upon the same series of events leading up to Ms. Hall's expulsion from the University.

17

> Indeed, the only new fact introduced in the Federal Complaint is the revelation of Ms. Hall's expulsion, which had not been disclosed in the State Complaint. *See* Docket No. 11, p. 10. This additional piece of information, however, does not provide sufficient grounds for this Court to ignore the clear mandate of claim preclusion.

Id. at 686.

Unlike <u>Hall</u>, here the facts related to the non-payment of claims are but one in a series of events detailed in the FAC which led to the destruction of Plaintiffs' business.  Accordingly, <u>Hall</u> does not support Defendants' position.

The Fourth Circuit case of <u>Sonoco Products Co. v. Physicians Health Plan, Inc.</u>, 338 F.3d 366 (4th Cir. 2003) (emphasis added) is particularly instructive concerning an analysis of whether a claim is within the scope of ERISA.   In <u>Sonoco</u>, the plaintiff, who was the ERISA plan sponsor, was in a contract dispute with the insurer.   The insurer removed the case to federal court and moved to dismiss.   The Fourth Circuit reversed the lower court and remanded to state court because there was not complete ERISA preemption reasoning that while plaintiff was a plan fiduciary at times, it was not acting in its fiduciary capacity in connection with the actions which formed the basis of its complaint and therefore, the claims were not within the scope of ERISA:

> Importantly, "the same entity may function as an ERISA fiduciary in some contexts but not in others." <u>Darcangelo</u>, 292 F.3d at 192. Accordingly, a plan sponsor is entitled to wear different hats: it may perform some functions as a fiduciary to the plan, while it may perform other functions on its own behalf, i.e., in a non-fiduciary capacity. A plan sponsor, however, only possesses standing to pursue actions under § 502(a) that are "related to the fiduciary responsibilities it possesses."

18

Coyne & Delany, 98 F.3d at 1465 (internal quotation marks omitted).

Where, however, a plan sponsor's claims in a lawsuit relate solely to its own injuries, and not to its fiduciary responsibilities to the plan or to the plan's participants and beneficiaries, it is not acting as an ERISA fiduciary under 29 U.S.C. § 1002(21)(A) . . . Sonoco maintains that it suffered harm separate and apart from any injury to the Plan Beneficiaries, and it is for that harm that it is attempting to recover.

Id. at 373 (emphasis added).

### 3.   Plaintiffs' Claims Are Capable of Resolution Without Interpretation of An ERISA Plan

Defendants' Notice of Removal also fails on the third factor required for complete ERISA preemption of a state law claim because Plaintiffs' claims are capable of resolution without interpretation of an ERISA plan.  Defendants do not allege that the claims in the FAC require interpretation of an ERISA plan.  In fact, not only is interpretation of an ERISA plan not *required* for resolution of the case, such interpretation would be *useless*, because the claims in this case have absolutely nothing to do with ERISA plans.

Moreover, ERISA does not preempt state law claims just because there is some tenuous connection to an ERISA plan.  See, e.g., Great-West Life & Annuity Ins. Co. v. Information Systems & Networks Corp., 523 F.3d 266, 271, 273 (4th Cir. 2008) (ERISA does not preempt state law claims for breach of contract and unjust enrichment brought by third party company, even though "any determination of [the third party's] state law claims, and the defenses thereto, would determine whether any claims should be paid under the Plan" because

"resolution of either claim requires no interpretation of the plan terms nor is it in any way dependent upon the plan being governed by ERISA").

Similarly, in <u>Djak,</u> 2011 WL 4571667 at *2, this Court held that removal was improper.  In <u>Djak</u>, plaintiff's wife was a Target employee. Plaintiff made payments online that he intended to go to paying off his Target credit card, but were erroneously applied to pay the premiums on his wife's Target ERISA health insurance plan.  Plaintiff was then charged interest on the credit card he never paid, and sued. Target removed the case to federal court, arguing that the claims, even though styled as breach of contract, related to payments made to an ERISA plan.

> This Court granted plaintiff's motion for remand reasoning:
>
> Target's bare assertion that ERISA bars Djak's claim does not satisfy the requirements for removal. Determining whether a balance was due for the health benefits for Djak's wife may require interpretation of an ERISA plan. Nonetheless, Target has not established that Djak is a participant, fiduciary, or beneficiary of his wife's health plan. <u>On the face of his complaint, Djak does not seek to recover benefits, enforce or clarify rights under an ERISA plan, or force disclosure of information</u>. Because "federal jurisdiction is doubtful, a remand is necessary.

<u>Id</u>. (emphasis added).

Defendants cite <u>Marks v. Watters</u>, 322 F.3d 316 (4th Cir. 2003), for the "well-established precedent" (IBC Notice of Removal ¶ 32) that "[c]laims challenging the administration of an employee welfare benefit plan fall squarely within the scope of § 502(a) of ERISA." <u>Marks</u>, 322 F.3d at 326.  First, Plaintiffs have not asserted any claims in the FAC challenging the administration of an

employee welfare benefit plan.  Plaintiffs' claims all relate to the interference by Defendants in Plaintiffs' business relationships leading to the ultimate destruction of those business relationships and Plaintiffs' business.  There is no ERISA plan implicated by Plaintiffs' FAC.  Second, the plaintiff in Marks was the estate of a mental health patient.  The estate sued the patient's healthcare providers and the insurance companies that insured and managed the patient's employer-provided healthcare benefits.  The only issue in that case was whether claims arising out of "mixed eligibility and treatment decisions" were completely preempted by ERISA.  Id. at 324.

Similarly, in Parrino v. FHP, Inc., 146 F.3d 699 (9th Cir. 1998), the estate of a decedent who was insured by a health maintenance organization ("HMO") sponsored by his employer sued the ERISA plan's administrator and primary healthcare provider for denying his claims for a certain brain tumor treatment.  As in Marks, the plaintiff was the beneficiary of a participant, so there was no impediment to § 502(a) standing.  The Court held that the plaintiff's claims were predicated upon alleged defects in the ERISA plan administrator's procedures for processing health insurance claims and therefore clearly fell within the ambit of ERISA and were completely preempted by ERISA.[6]

---

[6]    Similarly unavailing are the other cases cited by Defendants.  In each of those cases a participant or beneficiary of an ERISA plan sued the plan administrator or HMO for causes of action related to the treatment or benefits received (or, as the case may be, not received) by the participant or beneficiary.  See Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41 (1987); Makar v. Health Care Corp. of Mid-Atlantic (CareFirst), 872 F.2d 80 (4th Cir. 1989); Pegram v. Herdrich, 530 U.S. 211 (2000).

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court remand this case to the Circuit Court for Baltimore City.   Plaintiffs request oral argument pursuant to Local Rule 105.6.

Dated:   Baltimore, Maryland
             April 23, 2012

PADUANO & WEINTRAUB LLP

By: _____/s/ Anthony Paduano_____
             Anthony Paduano (*Admitted pro hac vice*)
             1251 Avenue of the Americas
             New York, New York 10020
             (212) 785-9100 (telephone)
             (212) 785-9099 (telecopier)

BAROODY & O'TOOLE
Thomas O'Toole
201 N. Charles Street, Suite 2102
Baltimore, Maryland 21201
(410) 539-8412 (telephone)
(410) 539-8411 (telecopier)
totoolelaw@aol.com

Attorneys for Plaintiffs