UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| Feldman's Medical Center Pharmacy, Inc., *et al.*, | : |
| Plaintiffs, | : Civil Action No. WDQ-12-613 |
| v. | : |
| CareFirst, Inc., *et al.*, | : |
| Defendants. | : |

**DEFENDANTS' JOINT BRIEF IN OPPOSITION
TO PLAINTIFFS' MOTION TO REMAND**

**I.   INTRODUCTION**

This Court has jurisdiction because plaintiffs' claims are based on allegations that defendants improperly processed reimbursement requests for ERISA benefit claims. Effectively conceding that such claims are completely preempted by ERISA, plaintiffs go to great lengths to distance themselves from the allegations in their own First Amended Complaint ("FAC"). This misguided effort fails.

For example, plaintiffs disingenuously claim that their "allegations have nothing to do with an ERISA plan, a particular claim, or a particular patient." Plaintiffs' Memorandum of Law in Support of Motion to Remand (D.E. 44-1) (the "Remand Brief") at 1. "Plaintiffs have not asserted any claims in the FAC challenging the administration of an employee welfare benefit plan." *Id.* at 20-21. Indeed, plaintiffs claim that "[t]his case is about a conspiracy to destroy Plaintiffs' business" and plaintiffs "clearly assert[] myriad allegations *having nothing to do with the failure to pay benefits* alleged in the prior [Maryland and Pennsylvania] actions." *Id.* at 1, 2 (emphasis added). Thus, according to plaintiffs, ERISA is irrelevant to their present claims.

Despite plaintiffs' attempt to rewrite the FAC through their briefing, the reality of plaintiffs' recycled claims is unavoidable – this case is fundamentally about ERISA claims. Indeed, in their briefing, plaintiffs ultimately concede that this case is about the processing of reimbursement requests for ERISA benefit claims. For example:

- "The FAC seeks damages as a result of Defendants' concerted and intentional efforts to destroy Plaintiffs' business by . . . *wrongfully withholding millions of dollars from Feldman's for medicine it purchased and dispensed*" to members of health benefit plans administered by defendants Independence Blue Cross ("IBC"), QCC Insurance Company ("QCC"), or CareFirst, Inc. ("CareFirst"). Plaintiffs' Memorandum of Law in Opposition to Defendants' Motions to Dismiss (D.E. 45) (the "Opposition Brief") at 2 (emphasis added); *see also* Remand Brief at 3 (same).

- "As part of their 'investigation' of Feldman's, CareFirst, IBC and the BCBSA came up with an ever-shifting set of completely bogus reasons for not paying Feldman's." Opposition Brief at 3.

- "The conspiracy to drive Feldman's out of business was put into place *once Feldman's began to submit claims* for large numbers of hemophilia patients. *The goal was to come up with reasons not to pay Feldman's*, thus driving them out of business. . . ." Opposition Brief at 26 (emphasis added).

- Defendants' alleged conspiracy "took the form of" "financial strong-arming[,] by *refus[ing] to pay claims* that only years later were paid[.]" Remand Brief at 11 (emphasis added).

- "PMA was forced to sell Feldman's operating assets for considerably less than fair market value, in part because . . . of the uncertainty of whether Feldman's would be paid by CareFirst and/or IBC for Factor drugs dispensed to their insureds." Opposition Brief at 6.

Plaintiffs' desperate – but patently unsuccessful – effort to hedge their allegations cannot prevent this Court from exercising jurisdiction under ERISA. Plaintiffs admittedly allege a conspiracy to delay and deny the approval of ERISA benefit claims, which allegations bring this case under federal jurisdiction. In addition to plaintiffs' recent briefs, the FAC demonstrates that plaintiffs' claims are based, in substantial part, on the IBC Defendants' and CareFirst's allegedly

untimely and/or otherwise improper failure to process and pay Feldman's reimbursement claims, which claims were submitted by Feldman's (a) pursuant to purported member assignments and (b) under [] ERISA plan[s] administered and underwritten by the IBC Defendants and CareFirst. Notice of Removal (D.E. 1) at ¶ 31; *see also id.* at ¶ 33 (summarizing allegations in the FAC). Removal therefore was proper under ERISA's "complete preemption" doctrine because (1) Feldman's admittedly received assignments from patients who were members of defendants' ERISA plans, (2) plaintiffs' claims are subsumed by ERISA Section 502(a), 29 U.S.C. § 1132(a), and (3) this Court must review ERISA plan documents – and, indeed, ERISA itself – to evaluate plaintiffs' purported claims in this case.

Plaintiffs cannot evade federal jurisdiction where, as here, they allege that defendants conspired to deny Feldman's reimbursements for ERISA benefit claims. The fact that plaintiffs seek a remedy different than that Feldman's previously sought from defendants is irrelevant. For these reasons, and those set forth more fully below, defendants jointly request that the Court deny Plaintiffs' Motion to Remand (D.E. 44) (the "Remand Motion").

**II.   ARGUMENT**

    **A.   The Standard for Removal under "Complete Preemption"**

In *Aetna Health Inc. v. Davila*, 542 U.S. 200, 210 (2004), the United States Supreme Court held that "if an individual, at some point in time, could have brought his claim under ERISA § 502(a)(1)(B), and [] there is no other independent legal duty that is implicated by a defendant's actions, then the individual's cause of action is completely pre-empted by ERISA §

502(a)(1)(B)."[1]  "If a state-law claim falls within the scope of § 502(a), the complete-preemption doctrine . . . provides that the state-law claim is 'necessarily federal in character' such that it 'arise[s] under' federal law and is removable to federal court."  *Singh v. Prudential Health Care Plan, Inc.*, 335 F.3d 278, 290 (4th Cir. 2003) (internal citation omitted).

Before *Davila*, the Fourth Circuit Court of Appeals structured the test for complete preemption somewhat differently, examining whether: (1) the plaintiff has standing under Section 502(a); (2) the claim is within Section 502(a)'s scope; and (3) the claim can be resolved without reviewing an ERISA plan.  *See Sunoco Prods. Co. v. Physicians Health Plan, Inc.*, 338 F.3d 366, 372 (4th Cir. 2003); *see also Panagodimos v. Contemporary Nursing Solutions, Inc.*, No. 12-128, 2012 U.S. Dist. LEXIS 31013, at *5 (D. Md. Mar. 8, 2012) (Quarles, J.) (denying motion to remand) (same).  Plaintiffs' claims are completely preempted under either test.[2]

### B. Feldman's Received Assignments from its Patients and Therefore Has Standing under ERISA

In *Feldman's*, this Court held that "a healthcare provider may acquire derivative standing under ERISA by obtaining a written assignment from a participant or beneficiary of his right to payment of medical benefits."  723 F. Supp. 2d at 819.  Plaintiffs' primary challenge to removal is that "plaintiffs do not have standing to bring an ERISA claim."  Remand Brief at 11; *see also id.* at 12-16.  In making this argument, plaintiffs misstate the law and mischaracterize defendants'

---

[1] In *Fossen v. Blue Cross and Blue Shield of Montana, Inc.*, 660 F.3d 1102, 1108 (9th Cir. 2011), the Ninth Circuit Court of Appeals recently clarified that "[t]he complete preemption doctrine applies to the other subparts of § 502(a) as well."

[2] In *Feldman's Med. Ctr. Pharmacy, Inc. v. CareFirst, Inc.*, 723 F. Supp. 2d 814 (D. Md. 2010) (Quarles, J.), this Court recognized that courts in the Fourth Circuit continue to follow the *Sunoco Products* three-part test even after *Davila*.  *Id.* at 818 n.6.  This Court also held that the result in *Feldman's* was the same under either framework.  *Id.*  This logic applies here as well.  Indeed, the first element of the *Davila* test appears to subsume the first two elements of the *Sunoco Products* test.

4

statements with respect to complete preemption. *Id.* Plaintiffs do *not* deny that (1) Feldman's obtained assignments from its patients,[3] (2) those patients were members of ERISA plans, (3) those plans were administered by the IBC Defendants or CareFirst, and (4) Feldman's previously sued these defendants – twice – to challenge their processing of ERISA benefit claims asserted under Feldman's purported assignments. The only distinction in this case is that plaintiffs now seek the consequential damages Feldman's allegedly suffered as a result of how those same benefit claims were processed. This is a distinction without a difference for purposes of complete preemption. *See* discussion *infra* at Section II.B.2.

The first *Sunoco Products* element is satisfied in this case, because the Court may dispense with each of plaintiffs' purported objections to federal jurisdiction based on Feldman's admitted assignments.

### 1. Plaintiffs' Disclaimer of Feldman's Assignments Does Not Preclude this Court from Holding that Section 502(a) of ERISA Applies

Plaintiffs rely heavily on the theory that by expressly disclaiming reliance on Feldman's assignments, those assignments become irrelevant to this Court's jurisdictional inquiry. *See* Remand Brief at 1-2, 12-14. Plaintiffs are wrong. Several courts have held that health care providers' claims were completely preempted by ERISA, despite the providers' efforts to distance themselves from their own assignments.

---

[3] *See* Exhibit 1 attached hereto (Affidavit of Jarrett Bostwick, Esq. in Support of Plaintiff/Counter-Defendant's Motion for Summary Judgment in the Maryland Action) (attaching Feldman's assignments); Notice of Removal at ¶¶ 31, 37-38; Memorandum of Law in Support of the IBC Defendants' Motion to Dismiss Plaintiffs' First Amended Complaint (D.E. 8-1) (the "Dismissal Brief") at Exhibits C (including the Plan) & F (including the assignments). The assignments reference Factor Health Management, Inc., which is "the parent company of Plaintiff Feldman's[.]" Exhibit 1 at ¶ 1.

For example, in *Borrero v. United Healthcare of N.Y., Inc.*, 610 F.3d 1296 (11th Cir. 2010), the Eleventh Circuit Court of Appeals affirmed the district court's decision to assert jurisdiction over several physicians' claims against United Healthcare. The *Borrero* Court observed that the "question is whether the Appellants, *at any time*, asserted claims on behalf of ERISA beneficiaries[,]" referencing *Davila* and other ERISA precedent. *Id.* at 1302-03 (emphasis added). After "United presented evidence of such assignments to the district court", the appellant physicians "contend[ed] that their complaints expressly disclaim[ed] causes of action under ERISA" and specifically "disclaim[ed] the assignments of benefits[.]" *Id.* at 1303.

The Eleventh Circuit was not convinced. It held that "the *factual allegations* raise precisely the type of ERISA determinations that trigger complete preemption[,]" thus "resolv[ing] the inherent conflict in a factually pled but simultaneously disclaimed cause of action." *Id.* (emphasis added). The substance of the physicians' claims – not their labels – controlled the complete preemption inquiry. *Id.* at 1303-04; *see also Paragon Office Services, LLC v. UnitedHealthGroup, Inc.*, No. 11-2205, 2012 U.S. Dist. LEXIS 41793, at *14-15 (N.D. Tex. Mar. 27, 2012) (denying motion to remand even though plaintiffs argued that they "are not suing in this case standing in the shoes of ERISA plan participants by way of assignments" and thus the "benefits assignments [are] irrelevant"); *Spring E.R., LLC v. Aetna Life Ins. Co.*, No. 09-2001, 2010 U.S. Dist. LEXIS 13565, at *13-14 (S.D. Tex. Feb. 17, 2010) (denying motion to remand despite plaintiff's denial it received assignments because, *inter alia*, plaintiff "has repeatedly held itself out as an assignee of benefits under the relevant ERISA health plans").[4]

---

[4] *See* Dismissal Brief at 2-8 (detailing Feldman's reliance on assignments in the previous Maryland and Pennsylvania Actions).

In *Feldman's*, this Court stated in *dicta* that a "'provider that has received an assignment of benefits and has a state law claim <u>independent</u> *of the claim arising under the assignment*  holds two separate claims. In such a case, the provider may assert a claim for benefits under ERISA, the state law claim, *or both*.'" 723 F. Supp. 2d at 820 n.12 (quoting *Conn. State Dental Ass'n v. Anthem Health Plans, Inc.*, 591 F.3d 1337, 1347 (11th Cir. 2009)) (first emphasis added). This principle supports removal in this case – as evidenced by the Eleventh Circuit's decision in *Connecticut State Dental Association* – because plaintiffs' purported state law claims are *not* "independent" of their allegations concerning ERISA claims-processing.

In *Connecticut State Dental Association*, two dentists and a dental membership organization sued Anthem under a variety of state law theories. "The crux of the allegations was that Anthem employed a number of practices, such as 'improper downcoding' and 'improper bundling,' as a means of underpaying participating dentists for services they performed." 591 F.3d at 1342. Anthem removed the suit, and the district court denied the plaintiffs' motion to remand. *Id.* at 1341-42. The Eleventh Circuit affirmed with respect to the dentists' claims, which the court found arose, albeit only in part, under ERISA. *Id.*

On appeal, the plaintiff dentists challenged Anthem's reliance on patient assignments. *Id.* at 1350-52. The *Connecticut State Dental Association* Court rejected this challenge, holding that "the existence of the assignment is irrelevant" only "so long as the provider's state law claim does not fall within § 502(a)[.]" *Id.* at 1347.[5] The Eleventh Circuit found that although part of the dentists' allegations challenged the rates they were paid under their provider agreements, the complaints also alleged that Anthem "systematically den[ied] and/or reduc[ed] [the] Dentists'

---

[5] The Eleventh Circuit also found that "Anthem has carried its burden of showing that Rutt and Egan received valid assignments from their ERISA patients." *Id.* at 1353.

7

reimbursement[s]", used "so-called guidelines" to deny claims, and "committed ERISA procedural violations" in handling claims. *Id.* at 1350-51. On this basis, the Court concluded that

> [w]hat we have, then, is really a hybrid claim, part of which is within § 502(a) and part of which is beyond the scope of ERISA. Because Rutt and Egan complain, at least in part, about denials of benefits and other ERISA violations, their breach of contract claim implicates ERISA.

*Id.* at 1351. The plaintiffs therefore failed in their effort to disclaim the impact of their patient assignments. Plaintiffs' analogous efforts in this case fail for the same reason.[6]

### 2. The Remedies Plaintiffs Seek in the FAC Do Not Impact the Assignments Received by Feldman's

Plaintiffs also argue that this Court should disregard Feldman's assignments because of the remedies plaintiffs seek, *i.e.*, compensatory and consequential damages allegedly suffered because of Feldman's financial distress and ultimate sale. *See* Remand Brief at 12. However, the remedy sought in a complaint is irrelevant to the "complete preemption" analysis. *See Wood v. Prudential Ins. Co. of Am.*, 207 F.3d 674, 678 (3d Cir. 2000) (recognizing that "a state law claim may fall within Section 502(a) and thus be completely preempted even if the plaintiff asks for relief that is not available under Section 502(a)"); *Elliot v. Fortis Benefits Ins. Co.*, 337 F.3d 1138, 1147 (9th Cir. 2003) (same); *Danca v. Private Health Care Sys., Inc.*, 185 F.3d 1, 5 n.4 (1st Cir. 1999) (same). Thus, plaintiffs cannot avoid federal jurisdiction merely by seeking non-ERISA remedies.

---

[6] The Fifth Circuit Court of Appeals has held that an "assignment of benefits is irrelevant" where the provider "neither seeks benefits from the plan *nor claims that the plan acted improperly in processing and denying* [the provider's] claim." *Mem'l Hosp. Sys. v. Northbrook Life Ins. Co.*, 904 F.2d 236, 250 (5th Cir. 1990) (emphasis added). Because plaintiffs allege exactly that in this case, they cannot argue that Feldman's assignments are irrelevant.

### 3. The Provider-Insurer Cases in which Complete Preemption Is Not Found Are Inapposite

In its *Feldman's* decision, this Court referenced several cases in which third-party providers' suits against insurers or ERISA administrators were not completely preempted. *See* 723 F. Supp. 2d at 819 n.7. Such cases have been decided in two types of circumstances, neither of which is present here:

- The providers' claims are based on alleged misrepresentations concerning insurance coverage. *See, e.g., The Meadows v. Employers Health Ins.*, 47 F.3d 1006 (9th Cir. 1995) (cited in Remand Brief at 13); *Franciscan Skemp Healthcare, Inc. v. Cent. States Joint Bd. Health & Welfare Trust Fund*, 538 F.3d 594 (7th Cir. 2008).

- The providers' claims are based on "in network" contractual agreements with insurers. *See, e.g., Blue Cross of California v. Anesthesia Care Assocs. Med. Group, Inc.*, 187 F.3d 1045 (9th Cir. 1999); *Pascack Valley Hosp., Inc. v. Local 464A UFCW Welfare Reimbursement Plan*, 388 F.3d 393 (3d Cir. 2004); *Johns Hopkins Hosp. v. CareFirst of Maryland, Inc.*, 327 F. Supp. 2d 577 (D. Md. 2004).

Plaintiffs do not base any of their purported claims on misrepresentations concerning insurance coverage, nor is Feldman's a "participating provider" with any defendant for factor claims. *See, e.g,* Dismissal Brief at 5 (discussing *Feldman's* decision in which Magistrate Judge Gauvey determined that ERISA – not the parties' provider agreement – governed CareFirst's processing of Feldman's factor claims). Indeed, because Feldman's has no applicable "provider agreement [] that would form an independent basis for recovery[,]" plaintiffs necessarily rely upon its patient assignments because its claims are based on the allegedly improper processing of ERISA benefit claims. *Found. Ancillary Services, LLC v. United HealthCare Ins. Co.*, No. 10-1374, 2011 U.S. Dist. LEXIS 119756, at *7 (S.D. Tex. Oct. 17, 2011) (denying motion to remand).

Plaintiffs' reliance on *Drs. Reichmister, Becker, Smulyan and Keehn, P.A. v. United Healthcare of the Mid-Atlantic, Inc.*, 93 F. Supp. 2d 618 (D. Md. 2000) (Remand Brief at 12-13)

9

is misplaced. In that case, the district court granted the plaintiff's motion to remand because the suit alleged that United Healthcare made a negligent misrepresentation concerning insurance coverage, *i.e.*, precisely the (inapposite) rationale discussed above. 93 F. Supp. 2d at 619, 621 (discussing, *inter alia*, *The Meadows*, *supra*). Further, "both parties concede[d]" that the patient-assignor "was not entitled to benefits on . . . the date of the alleged misrepresentation." *Id.* at 621. "Thus, under Defendant's own analysis, no examination of the [ERISA] policy is necessary." *Id.*

### 4. Defendants Have Not Previously Taken Positions that Bar a Finding of Complete Preemption in this Case

Plaintiffs also argue – incorrectly – that certain positions allegedly taken by the IBC Defendants or CareFirst in the Maryland and Pennsylvania Actions bar this Court from finding that plaintiffs' present claims are completely preempted. *See* Remand Brief at 14-16. This argument fails for several reasons.

*First*, plaintiffs have not even attempted to establish that defendants are judicially estopped from making any arguments in the Notice of Removal. *Second*, plaintiffs do not explain how any allegedly contradictory statements made by CareFirst could bind the IBC Defendants, or vice versa. *Third*, plaintiffs do not actually identify any contradictory positions. In the Maryland Action, CareFirst relied upon Feldman's assignments to establish jurisdiction under ERISA – just as here. As discussed *supra*, the fact that Feldman's now disclaims those same assignments is irrelevant. Nothing from this Court's *Feldman's* opinion changes this outcome, because in that case Feldman's expressly relied upon the assignments and therefore the "disclaimer" issue was not before the Court. In the Pennsylvania Action, the district court never reached the issue of whether the Pharmacy Plaintiffs were prohibited from relying on the subject

assignments by anti-assignment language in the Plan documents.  Thus, plaintiffs' argument fails.

      **C.**      **Plaintiffs' Claims Fall Within the Scope of ERISA Section 502(a)**

Plaintiffs' allegations fall within ERISA Section 502(a)'s broad scope.  According to plaintiffs, "[t]his case is about a conspiracy to destroy Plaintiffs' business[.]"  Remand Brief at 1.  "The conspiracy to drive Feldman's out of business was put into place once Feldman's began to submit claims for large numbers of hemophilia patients.  The goal was to come up with reasons *not to pay Feldman's*, *thus driving them out of business*. . . ."  Opposition Brief at 26 (emphasis added).  When plaintiffs refer generally to the conspiracy to "drive Feldman's out of business", they are referring to the alleged conspiracy whereby defendants "conjured up a series of ever-shifting set [sic] of meritless reasons for *not paying the [ERISA] claims*" submitted by Feldman's.  *Compare* Remand Brief at 17 *with* Opposition Brief at 26 (emphasis added).  Indeed, plaintiffs admittedly "seek[] damages as a result of Defendants' concerted and intentional efforts to destroy Plaintiffs' business by . . . *wrongfully withholding millions of dollars from Feldman's for medicine it purchased and dispensed*" to members of health benefit plans administered by IBC, QCC or CareFirst.  Opposition Brief at 2 (emphasis added); *see also* Remand Brief at 3 (same).

The two primary categories of wrongdoing alleged in the FAC are (1) defendants' allegedly untimely processing and reimbursement of Feldman's factor-related ERISA benefit claims, and (2) defendants' alleged breach of fiduciary duty, by failing to administer ERISA plans solely in the interests of their participants:

- *"Independence conspired with CareFirst and the BCBSA to deny Feldman's payment for Factor drugs Feldman's dispensed to Independence's insureds*, which payments Feldman's was entitled to[.]  Independence so conspired solely for the

purpose of injuring Feldman's." FAC at ¶ 121; *see also id.* at ¶¶ 132(a)-134, 137-45, 210 (same) (emphasis added).

- CareFirst and the IBC Defendants allegedly refused to reimburse Feldman's for factor provided under ERISA plans because they "simply did not want any 'exposure' to claims for expensive Factor medicine", and thus CareFirst and the IBC Defendants allegedly and improperly put "holds" on (and thereby delayed the processing and payment of) these claims. *Id.* at ¶¶ 155, 177-81; *see also id.* at ¶¶ 73, 97-99, 128-29, 131, 136, 166, 170-72, 226; FAC p. 2 (same).

These allegations fall within the scope of Section 502(a) and thus support federal jurisdiction under ERISA. *See Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 52 (1987) (holding that "the civil enforcement provisions of ERISA § 502(a) [are] the exclusive vehicle for actions by ERISA-plan participants and beneficiaries asserting improper processing of a claim for benefits. . . ."); *Marks v. Watters*, 322 F.3d 316, 326 (4th Cir. 2003) (same); *Parrino v. FHP, Inc.*, 146 F.3d 699, 703-704 (9th Cir. 1998) (same); *see also Pegram v. Herdrich*, 530 U.S. 211, 223-24 (2000) (discussing breach of fiduciary duty claims). Applying policies or procedures that allegedly result in a "delay in approving benefits" is "conduct falling squarely within [ERISA's] administrative function." *Pryzbowski v. U.S. Healthcare, Inc.*, 245 F.3d 266, 273-74 (3d Cir. 2001) (affirming complete preemption determination).[7]

### 1.     The "Label" Given to Plaintiffs' Claims Does Not Control

Plaintiffs first contend that "the FAC *does not* and could not *assert any federal claims*, therefore precluding a finding a federal question jurisdiction." Remand Brief at 2 (emphasis added). However, the particular "label" plaintiffs gave their purported causes of action does not control the complete preemption analysis. *See Davila*, 542 U.S. at 214; *Singh*, 335 F.3d at 291;

---

[7] Plaintiffs' contention that they "are suing for harm caused directly to them, not to the patients" (Remand Brief at 16) misconstrues the issue. Feldman's allegedly suffered harm in its status as an assignee, during the process by which the IBC Defendants and CareFirst processed the assigned ERISA benefit claims Feldman's submitted for reimbursement.

12

Notice of Removal at ¶ 25 (same).  "Because complete preemption often applies to complaints drawn to evade federal jurisdiction, a federal court may look beyond the face of the complaint to determine whether the claims alleged as state law causes of action in fact are necessarily federal claims." *Parrino*, 146 F.3d at 704.  Here, plaintiffs' allegations demonstrate that their claims – however framed or labeled – are based on allegations that the IBC Defendants and CareFirst did not properly process ERISA benefit claims.

>  As the Sixth Circuit Court of Appeals has recognized:
>
>  As long as ERISA exclusively regulates the activity (deciding whether to award benefits), ERISA prevents the distinct state law tort scheme from superimposing an extra layer of regulation on top of the ERISA-regulated plan benefit determination.

*Hutchison v. Fifth Third Bancorp*, 469 F.3d 583, 588 (6th Cir. 2006) (affirming finding of ERISA preemption).  If the rule were otherwise, any provider could launch a collateral attack on an ERISA administrator's claims-processing simply by disclaiming any assignments and suing under the common law.  Such as result is directly contrary to the United States Supreme Court's determination that "[t]he six carefully integrated civil enforcement provisions found in § 502(a) of the statute . . . provide strong evidence that Congress did not intend to authorize other remedies that it simply forgot to incorporate expressly."  *See Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 146 (1985); *see also Wood*, 207 F.3d at 679; *Pryzbowski*, 245 F.3d at 274-75.

### 2. ERISA Need Only Completely Preempt Part of a Single Claim for Federal Jurisdiction to Exist

Plaintiffs also argue that "the facts related to the non-payment of claims *are but one in a series of events detailed in the FAC* which led to the destruction of Plaintiffs' business."  Remand Brief at 18 (emphasis added); *see also id.* at 11 (defendants' alleged "synchronized effort" "took the form of intimidation of customers, destruction of Plaintiffs' reputation . . . *and financial*

13

*strong-arming by refusal to pay claims that only years later were paid*") (emphasis added). These purported qualifications – to the extent plaintiffs' other allegations even are distinct from the processing and non-payment of claims – misconstrue ERISA authority and should be disregarded by the Court.

Plaintiffs ignore the rule that if part of a cause of action is completely preempted, then the entire cause of action is completely preempted. *See Davila*, 542 U.S. at 213 (finding complete preemption where "interpretation of the terms of respondents' benefit plans *forms an essential part* of their [state law] claim. . . .") (emphasis added); *Conn. State Dental Ass'n*, 591 F.3d at 1351 (holding that "a hybrid claim, part of which is within § 502(a) and part of which is beyond the scope of ERISA[,]" sufficiently "implicated ERISA" for purposes of complete preemption); *Borrero*, 610 F.3d at 1304-05 (same); *Hoops v. Elk Run Coal Co., Inc.*, 57 F. Supp. 2d 357, 358, 360 & n.6 (S.D. W.Va. 1999) (wrongful discharge claim preempted by ERISA Section 510 because one alleged reason for terminations was that employer acted to avoid benefit claims) (denying motion to remand); Notice of Removal at ¶ 28 (same).[8]

### 3. Feldman's *Already Brought* ERISA Claims "at Some Point in Time"

Plaintiffs misunderstand the relationship between the prior Maryland and Pennsylvania Actions and the complete preemption issue. *See* Remand Brief at 16-18. Feldman's improperly has attempted to carve out purported state law claims from the same transactions that were

---

[8] *See also Jordan v. Equity Group Eufaula Div., LLC*, 648 F. Supp. 2d 1246, 1251 (M.D. Ala. 2009) (holding that "§ 301 of the LMRA completely preempts the second part of the state law wrongful discharge claim" and "[t]his creates federal removal jurisdiction over the part of the case") (denying motion to remand). Complete preemption cases under the Labor Management Relations Act are instructive because "the Supreme Court has found complete preemption in only three" statutes. *Barbour v. Int'l Union*, 640 F.3d 599, 631 (4th Cir. 2011) (*en banc*) (Agee, J., concurring) (citing cases under ERISA, the LMRA and the National Bank Act); *see also Conn. State Dental Ass'n*, 591 F.3d at 1343 n.3 (same).

litigated in the Maryland and Pennsylvania Actions. *See* Notice of Removal at ¶¶ 6-15, 34-36; Dismissal Brief at 2-10, 16-20. But defendants do not contend that *res judicata* is a basis for establishing federal jurisdiction for purposes of removal. Instead, these prior cases are relevant for another reason – they establish that Feldman's "could have brought his claim under ERISA § 502(a)(1)(B)" "at some point in time" *because Feldman's already did*. *Davila*, 542 U.S. at 210. The most obvious example is Feldman's conspiracy claim, which is inextricably related to the ERISA benefit claims previously litigated against the IBC Defendants and CareFirst. Plaintiffs cannot argue that their state law claims are outside the scope of ERISA Section 502(a) simply because they seek a different form of recovery (*i.e.*, consequential damages) than Feldman's sought in its previous cases challenging the same processing of the same ERISA claims.

### 4. The Same Analysis Applies With Respect to the BCBSA

The complete preemption analysis is no different for the BCBSA than it is with respect to the other defendants. Where the nature and substance of a plaintiff's claims are such that they arise under ERISA Section 502(a), they are completely preempted against fiduciaries and non-fiduciaries alike, without consideration to what remedies may or may not be available against a particular defendant. *See David P. Coldesina, D.D.S. v. Estate of Simper,* 407 F.3d 1126, 1139 (10th Cir. 2005); *Howard v. Parisian, Inc.,* 807 F.2d 1560, 1565 (11th Cir. 1987). Plaintiffs do not dispute this and have not suggested that the substance or nature of their claims against the BCBSA somehow distinguishes these claims, for ERISA preemption purposes, from the claims against the other defendants. Plaintiffs' claims against the BCBSA – just like their claims against the other defendants – are based on the allegedly improper denial of ERISA benefit claims. Plaintiffs allege that the very purpose of the BCBSA's purportedly phony fraud

investigation was to facilitate and legitimize the delay and/or denial of those benefits claims. *See* FAC at ¶¶ 121, 131-32, 142, 153, 158.

The only mention plaintiffs make of the BCBSA with respect to preemption is a footnote in the Remand Brief, which reads in part: "Defendants do not and cannot assert how the assignments have any bearing on Plaintiffs' relationship with Defendant BCBSA. . . ." Remand Brief at 14 n.5. This argument misses the point. As defendants have explained, the patient assignments are relevant in that they establish that plaintiffs had standing to bring claims under ERISA regarding the benefits claims at issue in this lawsuit. Whether or not the remedies that plaintiffs seek were available under Section 502(a) against the BCBSA in particular is irrelevant to the preemption analysis. *See* discussion supra at 8 (collecting cases).

### D. The Court Must Review ERISA Plans and ERISA's Claims-Processing Guidelines to Resolve Plaintiffs' Claims

Finally, plaintiffs' purported state law claims do not "arise independently of ERISA or the plan terms." *Davila*, 542 U.S. at 212; *see also Sunoco Prods.*, 338 F.3d at 372 (framing the inquiry as whether the claims may be resolved without referring to an ERISA plan). The Ninth Circuit Court of Appeals recently observed that "[t]his question requires a practical, rather than a formalistic, analysis. . . ." *Fossen*, 660 F.3d at 1110-11. Such an analysis demonstrates that defendants have satisfied the final requirement for ERISA complete preemption under *Davila* and *Sunoco Products*.

According to plaintiffs, "[d]efendants do not allege that the claims in the FAC require interpretation of an ERISA plan." Remand Brief at 19. A cursory review of the Notice of Removal reveals otherwise. *See id.* at ¶ 39. Feldman's claims concerning the allegedly untimely processing and reimbursement of ERISA benefit claims could not be resolved without reference

16

to ERISA itself (*e.g.*, 29 C.F.R. § 2560.503-1) and/or the ERISA plan(s), which lay(s) out the applicable claims-processing procedures and pursuant to which Feldman's customers had benefit claims approved by the IBC Defendants. *See id.*; Dismissal Brief at Exhibit C (Plan). For example, this Court would need to review these two sources to evaluate plaintiffs' allegations that improper "holds" were put on Feldman's reimbursement claims. *See, e.g.,* FAC at ¶¶ 142-44, 170-72, 175, 180-81, 226. Allegations "asserting improper denials" of benefit claims "and violations of ERISA procedural requirements" "stray . . . into ERISA territory" and thus "arise solely under ERISA or ERISA plans and not from any independent legal duty." *Conn. State Dental Ass'n*, 591 F.3d at 1353.

The two cases on which plaintiffs rely for the proposition that "ERISA does not preempt state law claims just because there is some tenuous connection to an ERISA plan" (Remand Brief at 19) are equally inapposite. The first – *Great-West Life & Annuity Ins Co. v. Info. Sys. & Networks Corp.*, 523 F.3d 266 (4th Cir. 2008) (Remand Brief at 19-20) – is not even a complete preemption case. Rather, *Great-West* addressed "express" preemption under ERISA Section 514(a), 29 U.S.C. § 1144(a), which is irrelevant to the questions of removal and federal jurisdiction. *See Sunoco Prods.*, 338 F.3d at 370-71 (referring to "conflict" preemption). The second – *Djak v. Target My Pay & Benefits*, No. 11-2388, 2011 U.S. Dist. LEXIS 111228 (D. Md. Sept. 28, 2011) (Quarles, J.) (Remand Brief at 20) – was decided by this Court in a single paragraph of analysis, because "Target's bare assertion that ERISA bars Djak's claim does not satisfy the requirements for removal" (*id.* at *5) and Target failed to establish Djak's standing under ERISA. Neither of these cases is analogous to this litigation.

### III. CONCLUSION

For the foregoing reasons, defendants respectfully request that this Court deny plaintiffs' Remand Motion in its entirety.[9]

/s/ Elisabeth S. Walden
Elisabeth S. Walden (Bar No. 28684)
AKIN GUMP STRAUSS HAUER & FELD LLP
Robert S. Strauss Building
1333 New Hampshire Ave., NW
Washington, D.C. 20036
Phone: (202) 887-4000
Fax: (202) 887-4526
        &
David L. Comerford (admitted *pro hac vice*)
Katherine M. Katchen (admitted *pro hac vice*)
Matthew R. Varzally (admitted *pro hac vice*)
AKIN GUMP STRAUSS HAUER & FELD LLP
Two Commerce Square
2001 Market Street, Suite 4100
Philadelphia, PA 19103-7013
Phone: (215) 965-1200
Fax: (215) 965-1210

*Counsel for Independence Blue Cross and QCC Insurance Company*

/s/ Jorge V. Cazares (w/p)
Jorge V. Cazares (admitted *pro hac vice*)
PUGH, JONES & JOHNSON, P.C.
180 N. LaSalle Street, 34th Floor
Chicago, IL 60601
Phone: (312) 768-7800
Fax: (312) 768-7801

*Counsel for the Blue Cross Blue Shield Association*

/s/ Patrick P. de Gravelles (w/p)
Patrick P. de Gravelles (Bar No. 29245)
CareFirst BlueCross BlueShield
Litigation General Counsel
840 First St., NE, DC12-08
Washington, D.C. 20065
Phone: (202) 680-7457
Fax: (202) 680-7620

*Counsel for CareFirst, Inc.*

Filed: May 21, 2012

---

[9] Although defendants filed an unopposed motion to extend the deadline for this filing by one week, defendants filed this brief out of an abundance of caution so that the Remand Motion is not construed as unopposed.

## **CERTIFICATE OF SERVICE**

I hereby certify that on May 21, 2012, a true and correct copy of **Defendants' Joint Brief in Opposition to Plaintiffs' Motion to Remand** was filed and served upon counsel of record for the parties via the Court's ECF system, as well as served separately by First-Class and electronic mail.

                                                  /s/ Elisabeth S. Walden
                                                  Elisabeth S. Walden