### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| ———————————————————— : | | |
| **Feldman's Medical Center Pharmacy, Inc.,** *et al.***,** : | | |
| : | **Civil Action No. WDQ-12-613** | |
| **Plaintiffs,** : | | |
| : | | |
| **v.** : | | |
| : | | |
| **CareFirst, Inc.,** *et al.***,** : | | |
| : | | |
| **Defendants.** : | | |
| ———————————————————— : | | |

### DEFENDANTS' JOINT REPLY BRIEF IN SUPPORT OF THEIR
### MOTIONS TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT

In their opposition to defendants' motions to dismiss (D.E. 45) (the "Opposition Brief"), plaintiffs make inaccurate statements – some of which directly contradict their own pleading – and rely upon inapposite case law. Indeed, plaintiffs simply ignore the binding allegations in their own First Amended Complaint ("FAC"), ignore the impact of the previous Pennsylvania and Maryland Actions on this case, and ignore decisions that foreclose their purported common law claims. Plaintiffs' FAC should be dismissed in its entirety.

### I.  ERISA BARS PLAINTIFFS' PURPORTED STATE LAW CLAIMS

#### A.  Each of Plaintiffs' Claims that is Completely Preempted by ERISA Should Be Dismissed by the Court

As to complete preemption, plaintiffs rely solely upon the brief in support of their motion for remand (D.E. 44-1) (the "Remand Brief"), which does not contest defendants' argument that any completely preempted claim must be dismissed because plaintiffs seek remedies that are not available under ERISA. *See* Memorandum of Law in Support of the IBC Defendants' Motion to Dismiss Plaintiffs' First Amended Complaint (D.E. 8-1) (the "Opening Brief") at 10-14. Thus, plaintiffs have conceded this critical point. On the remaining issues, defendants similarly

1

incorporate by reference their arguments in support of complete preemption from their Joint

Brief in Opposition to Plaintiffs' Motion to Remand (D.E. 49).

> **B.      Plaintiffs' Claims are Expressly Preempted because they Relate to the Allegedly Improper Processing and Administration of ERISA Plan Benefits**

> **1.      Each of Plaintiffs' Arguments Against Express Preemption Fails**

Plaintiffs oppose the argument that their purported state law claims are "expressly

preempted" by ERISA Section 514(a), 29 U.S.C. § 1144(a), on four alleged grounds, each of

which fails.

*First*, plaintiffs contend that the IBC Defendants mischaracterized express preemption.

Opposition Brief at 10.  This is simply false.  Plaintiffs wrongly believe that the Supreme Court's

decision in *New York State Conf. of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514

U.S. 645 (1995), abrogated the entirety of the Court's previous express preemption precedents.

It did not.  While *Travelers* further refined what it means for a state law claim to "relate to" an

ERISA plan, the decision scrutinized New York's patient surcharge statute with the benefit of the

Court's previous cases, not by disavowing them.  *See id.* at 655-58, 662-64.[1]  Justice Souter,

writing for a unanimous Court, even clarified that "we do not hold today that ERISA preempts

only direct regulation of ERISA plans, *nor could we do that with fidelity to the views expressed

in our prior opinions on the matter*."  *Id.* at 668 (emphasis added).

*Travelers* has been interpreted to stand for the proposition that "Congress intended

ERISA to preempt *at least* three categories" of state law claims: (1) those that "mandate" the

"administration" of ERISA plans; (2) those that regulate or preclude "uniform administrative

---

[1] Citing, *inter alia*, *Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133 (1990); *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85 (1983); *FMC Corp. v. Holliday*, 498 U.S. 52 (1990); *Metro. Life Ins. Co. v. Massachusetts*, 471 U.S. 724 (1985).

practice[s]" by employers or plan administrators; and (3) those that "provide alternative enforcement mechanisms" to ERISA Section 502(a). *Wilmington Shipping Co. v. New England Life Ins. Co.*, 496 F.3d 326, 342 (4th Cir. 2007) (emphasis added); Opening Brief at 14 (same). Neither these three categories – nor anything else in the *Travelers* decision – contradicts defendants' argument that state claims "based on the alleged improper processing of a claim for benefits" are sufficiently "related to" an ERISA plan for purposes of express preemption. Opening Brief at 15 (quoting, *inter alia*, *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 48 (1987)). Likewise, while the *Travelers* Court presumed that "Congress does not intend to supplant state law . . . in fields of traditional state regulation," 514 U.S. at 654-55, an alleged conspiracy to improperly process ERISA benefit claims is not an area in which Maryland state law traditionally has applied. Plaintiffs do not – and cannot – contend otherwise.

*Second*, plaintiffs contend that their claims do not involve "traditional ERISA plan entities" and "do not implicate any of the *Travelers* categories[.]" Opposition Brief at 11. This also is false. Plaintiffs' claims *do* involve "traditional ERISA plan entities" because the IBC Defendants and CareFirst qualified as fiduciaries based on their role in administering ERISA plan benefits. *See Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 111 (2008) (holding that courts "should consider a benefit determination to be a fiduciary act"). Feldman's – although it now desperately attempts to disavow the very assignments on which it based its two prior lawsuits – allegedly was damaged in its role as assignee of its patients' ERISA benefits. *See, e.g.,* Opening Brief at 8-16. Plaintiffs' claims also invoke the *Travelers* categories, because these state law claims (1) purport to provide Feldman's with an alternative enforcement mechanism to recover consequential damages for defendants' allegedly improper processing of ERISA benefit claims, which remedy ERISA otherwise prohibits, and (2) attempt to regulate the manner in which

defendants' administer ERISA benefit plans.  The decision in *Morstein v. Nat'l Ins. Services, Inc.*, 93 F.3d 715 (11th Cir. 1996) (*en banc*) (Opposition Brief at 11), is not to the contrary.  In *Morstein*, the Eleventh Circuit held that express preemption does not "extend to state law tort claims brought against an insurance agent" because the agent "is a non-ERISA entity" and such claims "do[] not affect relations among principal ERISA entities[.]"  *Id.* at 722.[2]

 *Third*, plaintiffs incorrectly assert that this case does not "relate[] to the administration of an ERISA plan."  Opposition Brief at 11-12.  Indeed, plaintiffs themselves contradict this, by stating that "the FAC makes clear that the claims at issue are based on Defendants' conspiracy to destroy Plaintiffs' business through various means, *not limited to their improper refusal to make payments to Feldman's*."  *Id.* at 12 (emphasis added).  Plaintiffs are bound by their allegations, *inter alia*, that "Independence conspired with CareFirst and the BCBSA *to deny Feldman's payment for Factor drugs* Feldman's dispensed to Independence's insureds, which payments Feldman's was entitled to[.]"  FAC at ¶ 121 (emphasis added); *see also id.* at ¶¶ 132(a)-134, 137-45, 210 (same).  Defendants allegedly delayed or denied Feldman's benefit claims for their own financial benefit, to the detriment of Feldman's and plan participants, and in violation of defendants' fiduciary duties.  *See id.* at ¶¶ 73, 97-99, 128-29, 131, 136, 155, 166, 170-72, 177-81, 226; FAC p. 2.  A purported "civil conspiracy" to reduce ERISA benefit reimbursements falls within ERISA Section 514(a)'s broad express preemption provision.  *See Franco v. Conn. Gen. Life Ins. Co.*, No. 07-6039, 2012 U.S. Dist. LEXIS 8128, at *9-12 (D.N.J. Jan. 24, 2012) (dismissing claim).

---

[2] The *Morstein* Court recognized that "ERISA entities are the employer, the plan, the plan fiduciaries, and the beneficiaries under the plan."  *Id.*  The IBC Defendants and CareFirst were "plan fiduciaries" and Feldman's allegedly was harmed while standing in the shoes of its patients, who were "beneficiaries under the plan."

*Fourth*, the Court will need to review ERISA plans, and ERISA itself, to evaluate plaintiffs' allegations that Feldman's ERISA benefit claims were processed and administered improperly. *See* Defendants' Joint Brief in Opposition to Plaintiffs' Motion to Remand (D.E. 49) at 16-17. In any event, plaintiffs' argument that express preemption does not apply "unless" "an ERISA benefit plan" "is 'a critical factor in establishing liability'" mischaracterizes the referenced authority. Opposition Brief at 12 (citing *McClendon*, *supra*). The Fourth Circuit has held that "a state law claim [also] is preempted when 'it conflicts directly with an ERISA cause of action.'" *Griggs v. E.I. DuPont de Nemours & Co.*, 237 F.3d 371, 378 (4th Cir. 2001) (discussing *McClendon*). Here, plaintiffs improperly attempt an end-around ERISA Section 502(a) by seeking consequential damages via common law claims for alleged claims-processing delays.

### 2.    Express Preemption Does Not Turn on "Fiduciary" Status

Plaintiffs do not distinguish the BCBSA from the other defendants for the purposes of express preemption. This is not surprising, given that the analysis is the same. Claims are expressly preempted against ERISA fiduciaries and non-fiduciaries alike when such claims relate to the function of an ERISA plan. *See Kollman v. Hewitt Associates, LLC*, 487 F.3d 139, 149-50 (3d Cir. 2007) (claim against non-ERISA fiduciary expressly preempted where defendant allegedly miscalculated ERISA benefits); *Franco*, *supra* (claim against non-ERISA fiduciary expressly preempted where defendant allegedly perpetrated a scheme causing ERISA fiduciaries to underpay benefits). Here, plaintiffs allege that the BCBSA spearheaded a "bogus" investigation designed to facilitate the improper processing of ERISA claims by the other defendants. *See* FAC ¶¶ 121, 131-32, 142, 153, 158. Therefore, plaintiffs' claims against the BCBSA are expressly preempted by ERISA Section 514(a).

## II.   PLAINTIFFS' CLAIMS ARE BARRED BY *RES JUDICATA*

### A.   The Previous Judgments Against Feldman's Were "on the Merits"

Plaintiffs attempt to re-litigate the same ERISA benefit claims that were resolved fully in the Pennsylvania Action by seeking consequential damages allegedly suffered by Feldman's because of the alleged delay in payment.  In an attempt to avoid this reality, plaintiffs argue that "[i]n neither the FMCP ERISA Case nor the Templin Case was there a final decision on the merits of the claims for relief asserted by the plaintiffs in those cases.  In both cases the claims at issue were paid in full prior to the Court's decision."  Opposition Brief at 14.  This argument misconstrues the law of *res judicata* and the impact of the previous judgments in the Pennsylvania and Maryland Actions.

#### 1.   The Pennsylvania Action

Plaintiffs wrongly argue that the district court's holding in the Pennsylvania Action that the Templin Plaintiffs' claims were "moot" is not sufficient to warrant preclusive effect.  *Id.* at 14-16.  "A dismissal with prejudice satisfies the requirement of having a previous judgment on the merits.  This is so *even when the prior action was dismissed with prejudice based on procedural grounds*."  *Qihui Huang v. Salameh*, No. 06-2444, 2010 U.S. Dist. LEXIS 83878, at *6 (D. Md. Aug. 13, 2010) (emphasis added).[3]  Other courts have reached the same conclusion.  *See, e.g., Jefftex Int'l Ltd. v. JPI Trading Corp.*, 369 Fed. Appx. 303, 304 (2d Cir. 2010) (affirming dismissal on *res judicata* grounds); *Bentley v. Fanguy*, 396 Fed. Appx. 130, 131-32

---

[3] Citing *Hall v. St. Mary's Seminary & Univ.*, 608 F. Supp. 2d 679 (D. Md. 2009); *Assa'Ad-Faltas v. Pres. of the Univ. of South Carolina*, 291 Fed. Appx. 534 (4th Cir. 2008).  The IBC Defendants discussed *Hall*, *supra*, in their Opening Brief.  *Id.* at 17-19.  In *Assa'Ad-Faltas*, *supra*, the Fourth Circuit held that *res judicata* applied "even though the prior action was dismissed with prejudice based on Assa'Ad-Faltas's failure to comply with discovery and her abusive demeanor during a deposition, rather than on the merits of her claims."  291 Fed. Appx. at 536.

(5th Cir. 2010) (recognizing that "a dismissal with prejudice is deemed an adjudication on the merits for the purposes of *res judicata*") (citation omitted). The Court should follow this rule and bar plaintiffs from re-litigating the processing and payment of ERISA claims in this lawsuit.

To the extent that the Court is not inclined to apply the general proposition that procedural dismissals with prejudice are "on the merits" for purposes of *res judicata*, the Court must "look[] beyond the linguistic label employed by the district court in determining whether a dismissal transpired on jurisdictional grounds." *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1189 (11th Cir. 2003) (affirming dismissal on *res judicata* grounds). In *Davila*, because "the district court unquestionably couched its holding in jurisdictional terms" the plaintiff argued that *res judicata* improperly was applied to bar his claims. *Id.* at 1188. The Eleventh Circuit disagreed, holding that "[a]lthough the district court [] employed 'jurisdictional' language, it is equally plain as a substantive matter that the court did not actually conclude that it lacked the power to adjudicate the dispute before it." *Id.* The *Davila* Court found that the district court's decision contained "analysis [that] can only be considered a decision on the merits." *Id.* at 1189; *see also Wakefield v. Cordis Corp.*, 304 Fed. Appx. 804, 806 (11th Cir. 2008) (following *Davila* and holding that "the district court's prior ruling was on the merits" despite the label it used).

In the Pennsylvania Action, the district court expressly held that "IBC approved all disputed insurance claims for payment during the administrative review process the Court had ordered the parties to complete" and "CareFirst paid the disputed claims." *Templin et al. v. Independence Blue Cross et al.*, No. 09-4092, 2011 U.S. Dist. LEXIS 51523, at *16 (E.D. Pa. May 13, 2011); *see also id.* at *3, *14, *19 (same). Thus, "looking beyond the linguistic label" of the district court's dismissal based on "mootness", the district court held that the Templin Plaintiffs' claims were *extinguished* because they were *completely satisfied*. Plaintiffs may not

7

re-litigate the same ERISA benefit claims previously resolved in the Pennsylvania Action simply by seeking a different form of damages here. The *Templin* Court's finding that Feldman's claims were fully satisfied and extinguished goes to "the merits" of plaintiffs' claims and, as a necessary consequence, precludes plaintiffs from seeking any additional recovery.

### 2.    The Maryland Action

According to plaintiffs, "the Court never ruled on any of the substantive issues pleaded in the complaint in [the Maryland] [A]ction." Opposition Brief at 15. Plaintiffs' weak effort to distance themselves from this Court's summary judgment ruling in the Maryland Action fails. In that decision, Magistrate Judge Gauvey specifically held that CareFirst had *not* acted improperly – as Feldman's repeatedly contended it had – when CareFirst withheld reimbursements to Feldman's on the basis of the parties' licensing dispute. *See Feldman's Med. Ctr. Pharm., Inc. v. CareFirst, Inc.*, 823 F. Supp. 2d 307 (D. Md. 2011).[4] Because plaintiffs' purported state law claims in this case each presume defendants' intentional wrongdoing, they cannot succeed. As a result, this Court's previous holding bars any claims against CareFirst and, for the reasons previously set forth, the IBC Defendants as well. *See* Opening Brief at 19-21.[5]

-----------------------------------

[4] Plaintiffs' statement that "the issue of CareFirst's intent was [] not before the Court" (Opposition Brief at 21) is wrong as a matter of fact and law, because *Feldman's put the issue before the Court* by arguing that CareFirst's allegedly improper actions justified a higher rate of prejudment interest than otherwise would apply under ERISA. *See also* Memorandum of Law in Support of Defendant CareFirst, Inc.'s Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6) (D.E. 9-1) (the "CareFirst Brief") at 3-6, 8-9 (establishing, *inter alia*, that "[t]his Court has already ruled on the allegations that CareFirst intentionally or purposefully acted in an improper manner *vis-à-vis* Feldman's").

[5] Plaintiffs fail to substantively address the IBC Defendants' additional arguments that (1) they also benefit from the *res judicata* effect of this summary judgment ruling, and (2) plaintiffs' claims against the IBC Defendants are barred, in the alternative, by the doctrine of non-mutual defensive collateral estoppel.

**B.      Plaintiffs' Claims Derive from the Same Facts and Transactions at Issue in the Previous Pennsylvania and Maryland Actions**

This case is about the allegedly improper processing of the ERISA benefit claims that were litigated in the Pennsylvania and Maryland Actions.  Plaintiffs contend that "[s]imply repeating, as Defendants do, that the claims at issue all related to the IBC Defendants and CareFirst's refusal to pay the claims . . . does not demonstrate that the claims arise from the same transaction."  Opposition Brief at 18.  But what defendants are "simply repeating" are plaintiffs' own binding allegations in the FAC.  Those allegations demonstrate that this action arises entirely from the ERISA claims-processing disputes previously litigated by Feldman's against the IBC Defendants and CareFirst.  *See, e.g.,* FAC at ¶¶ 73, 97-99, 121, 128-29, 131, 132(a)-134, 136-45, 155, 166, 170-72, 177-81, 210, 226.[6]

As the Northern District of Oklahoma held in an analogous case:

> Plaintiff has attempted to cast her claims as based on alleged fraud by Dr. Lukens during an [independent medical examination] and asserts that other defendants conspired to perpetrate this fraud, but *it is clear that plaintiff's claims directly concern the management of an ERISA plan and denial of her claim for LTD benefits*.  Although plaintiff is seeking compensatory damages for unspecified harm, the factual basis for her claims is that Dr. Lukens, while acting in conspiracy with the other defendants, conducted a fraudulent IME, and Kemper relied on the fraudulent IME to deny plaintiff's claim for LTD benefits.  *Fraudulent acts contributing to denial of an ERISA claim are simply part of a plaintiff's ERISA claim* and, even if fraud does occur during the review process, this is simply part of the district court's analysis under the

---

[6] Plaintiffs "appear[] to be under the mistaken impression that every element of a claim must have been actually litigated and decided in prior litigation in order for the new claims to be precluded.  In this respect, [plaintiffs] appear[] to confuse the doctrines of collateral estoppel and claim preclusion."  *Total Control, Inc. v. Danaher Corp.*, 359 F. Supp. 2d 380, 385 (E.D. Pa. 2005) (granting motion to dismiss on *res judicata* grounds).  In *Total Control*, the district court rejected an argument by the plaintiff that "it only learned of the extent of [the defendants'] conduct in the course of [the previous] litigation" because "this argument is belied by the [plaintiff's] own conduct."  *Id.*  For the reasons discussed *infra*, plaintiffs also cannot make such an argument here.

arbitrary and capricious standard when reviewing a plan administrator's decision.

*Cameron v. The Forest Hills IPA, Inc.*, No. 09-311, 2009 U.S. Dist. LEXIS 95190, at *14-15 (N.D. Okla. Oct. 13, 2009) (emphasis added).  In *Cameron*, the district court dismissed claims under *res judicata* after holding that the plaintiff's state law claims were completely preempted by ERISA.  *Id.* at *20-21.

        The fact that plaintiffs assert different causes of action or seek different recoveries – as plaintiffs now assert in response to the motions to dismiss (Opposition Brief at 19-20) – is irrelevant to the *res judicata* inquiry, and plaintiffs cite no cases to the contrary.  *See also* Opening Brief at 17-19 (collecting cases).  Nor are any of the cases upon which plaintiffs rely even arguably apposite.  *See* Opposition Brief at 19-20.  Indeed, they stand for the unremarkable proposition that where two sets of claims share a minimal factual overlap, *res judicata* will not bar the later claims.  *See, e.g., Awah v. Bd. of Educ. of Baltimore Cty.*, No. 09-1044, 2009 WL 5030729, at *3 (D. Md. Dec. 15, 2009) (two actions shared only one common fact); *Herrmann v. Cencom Cable Assoc., Inc.*, 999 F.2d 223, 227 (7th Cir. 1993) (same).

        The Court also should reject plaintiffs' assertion that they could not have asserted the subject claims in the Pennsylvania or Maryland Actions.  *See* Opposition Brief at 20-21.[7] Feldman's made many of the exact same allegations against CareFirst that it reasserts in this case.  *See* Opening Brief at 4-5.  Moreover, plaintiffs allege that Feldman's was sold in December 2009 (FAC at ¶ 253), well before judgment was entered in either the Pennsylvania or Maryland Actions.  *See* Opening Brief at 5, 7-8.  Indeed, the Maryland Action was not removed

---

        [7] Citing, *inter alia*, *Durham v. Jones*, No. 10-2534, 2011 WL 1557841, at *5 (D. Md. Apr. 21, 2011) ("Here, as the procedural history recited above clearly indicates, Plaintiff had no opportunity in the previous proceedings to develop or bring the claims he now brings.").

to this Court until February 2010 (Maryland Action, D.E. 1), and the Templin Plaintiffs' Second

Amended Complaint was not even filed until November 2010 (Pennsylvania Action, D.E. 48).

Plaintiffs ask this Court to rule that an alleged *conspiracy* to delay and deny ERISA

benefit claims – which conspiracy allegedly supports antitrust, unfair competition and civil

conspiracy claims – is somehow qualitatively different than the underlying delay and denial of

such claims.  This position is contrary to both law and logic.  The delay and denial of claims has

been adjudicated to final judgment.  Thus, this case – about an alleged *conspiracy* to delay and

deny claims – is barred by *res judicata* and cannot be allowed to proceed.

This Court should follow recent decisions from this District that have applied *res judicata*

to bar suits brought on identical or nearly identical facts and transactions as previous suits.  *See,*

*e.g.*, *Vaeth v. Mayor and City Council of Baltimore City*, No. 11-182, 2011 U.S. Dist. LEXIS

114183, at *12-13 (D. Md. Oct. 3, 2011) (Quarles, J.) (dismissing claims where subsequent suit

arose from the previous denial of plaintiff's disability benefits), *aff'd without op.*, 2012 U.S.

App. LEXIS 7049 (4th Cir. Apr. 6, 2012); *McMillan v. Bierman, Gessing, Ward & Wood LLC*,

No. 11-2048, 2012 U.S. Dist. LEXIS 15370, at *13-14 (D. Md. Feb. 8, 2012) (dismissing claims

where, *inter alia*, "Plaintiff has already raised some of these issues" in a previous foreclosure

action); *Hare v. Opryland Hospitality, LLC*, No. 11-1439, 2011 U.S. Dist. LEXIS 141666, at *6-

11 (D. Md. Dec. 9, 2011) (applying *res judicata* and claim-splitting principles to bar a second

lawsuit admittedly brought on "identical" factual grounds as the first).[8]

---

[8] Plaintiffs note that the BCBSA did not join the other defendants in asserting *res judicata*
as a ground for dismissal.  Opposition Brief at 14.  The BCBSA did, however, contend that
plaintiffs were precluded by non-mutual defensive collateral estoppel from re-litigating the intent
behind the delay or denial of Feldman's reimbursement claims in attempting to establish
plaintiffs' present intentional interference with economic relations claim against the BCBSA.
*See* Defendant Blue Cross Blue Shield Association's Memorandum of Law in Support of its

### III.   EACH OF PLAINTIFFS' PURPORTED STATE LAW CLAIMS FAIL AS A MATTER OF LAW

#### A.   Maryland Antitrust Act

##### 1.   Plaintiffs Have Not Alleged a Cognizable "Group Boycott"

Plaintiffs do not mention a "boycott" in the FAC.  Nonetheless, in an effort to salvage their patently defective "antitrust" claim, plaintiffs now argue they have alleged a "group boycott" claim that "can be found to constitute [an] antitrust violation[] under either the '*per se*' approach[] or the 'rule of reason' analysis."  Opposition Brief at 23-24.  This contention fails as a matter of law for two reasons.

*First*, plaintiffs cannot avoid the rigors of a "rule of reason" analysis by assuming that alleged "group boycotts" will be analyzed under the *per se* test of antitrust liability.  The Supreme Court's "precedent limits the *per se* rule in the boycott context to cases involving *horizontal agreements among direct competitors*."  *NYNEX Corp. v. Discon, Inc.*, 525 U.S. 128, 135 (1998) (emphasis added); *see also Universal Grading Service v. Ebay, Inc.*, No. 09-2755, 2011 U.S. Dist. LEXIS 25193, at *22 (N.D. Cal. Mar. 8, 2011) (following *NYNEX* and dismissing purported "group boycott" claim); *Vaughn Med. Equip. Repair Service, LLC v. Jordan Reses Supply Co.*, No. 10-124, 2010 U.S. Dist. LEXIS 88958, at *44-48, 55-61 (E.D. La. Aug. 24, 2010) (same).  Plaintiffs do not allege – nor could they – that the IBC Defendants, CareFirst and the BCBSA are "direct competitors."  Thus, defendants' alleged conspiracy in this case is not subject to a *per se* antitrust analysis.[9]

---

Motion to Dismiss Plaintiffs' First Amended Complaint (D.E. 36-1) (the "BCBSA Brief") at 10-11.  Plaintiffs did not respond to this argument.

[9] In a previous decision, the Supreme Court held that a "group boycott" "has generally been limited to cases in which firms with market power boycott suppliers or customers in order to discourage them from doing business with a competitor[.]"  *FTC v. Indiana Federation of Dentists*, 476 U.S. 447, 458 (1986).  In *Indiana Federation of Dentists*, the Supreme Court

*Second*, the FAC contains no allegations as to the relevant market, the relevant product(s) or service(s), or the defendants' respective market power, each of which is required to state a claim under the "rule of reason" approach. *See Leegin Creative Leather Prods., Inc. v. PSKS, Inc.*, 551 U.S. 877, 885-86 (2007); *Cont'l Airlines, Inc. v. United Airlines, Inc.*, 227 F.3d 499, 509 (4th Cir. 2002); *Satellite Television & Assoc. Resources, Inc. v. Cont'l Cablevision of Virginia, Inc.*, 714 F.2d 351, 355 (4th Cir. 1983). This failure is fatal to plaintiffs' antitrust claim:

> Where the plaintiff fails to define its proposed relevant market with reference to the rule of reasonable interchangeability and cross-elasticity of demand, or alleges a proposed relevant market that clearly does not encompass all interchangeable substitute products even when all factual inferences are granted in plaintiff's favor, the relevant market is legally insufficient and a motion to dismiss may be granted.

*Queen City Pizza, Inc. v. Domino's Pizza, Inc.*, 124 F.3d 430, 436 (3d Cir. 1997) (affirming dismissal of claims); *see also Apani Sw., Inc. v. Coca-Cola Enters., Inc.*, 300 F.3d 620, 628 (5th Cir. 2002) (same). Plaintiffs' bare bones antitrust allegations in the FAC are precisely the sorts that fail to cross the "plausibility" threshold established in the Supreme Court's seminal *Twombly* decision. *See, e.g., Burtch v. Milberg Factors, Inc.*, 662 F.3d 212 (3d Cir. 2011) (affirming

---

addressed whether "a conspiracy among dentists to refuse to submit x-rays to dental insurers for use in benefits determinations" violated the FTC Act and, by extension, the Sherman Act. *Id.* at 448-49, 455. The Court recognized that the dentists' actions "resemble[d] practices that have been labeled 'group boycotts': the policy constitutes a concerted refusal to deal on particular terms with patients covered by group dental insurance." *Id.* at 458. Plaintiffs' purported antitrust claims do not fall under this particular formulation of group boycotts, either – plaintiffs do not allege that defendants conspired against Feldman's "to discourage [it] from doing business with a competitor" of any of the defendants. *See also TheMLSonline.com, Inc. v. Reg'l Multiple Listing Service of Minn., Inc.*, No. 11-2455, 2012 U.S. Dist. LEXIS 1725, at *16-17 (D. Minn. Jan. 5, 2012) (dismissing Sherman Act group boycott claim); *Cellco P'Ship v. Hope*, No. 11-432, 2012 U.S. Dist. LEXIS 30019, at *10-11 (D. Ariz. Mar. 6, 2012) (same). Instead, Feldman's alleges that defendants conspired to cease doing business *with Feldman's*.

dismissal of Sherman Act claims after *Twombly*); *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross and Blue Shield*, 552 F.3d 430 (6th Cir. 2008) (same).[10]

### 2.    Defendants Are Exempt from Antitrust Liability

Plaintiffs contend that "even if [defendants] are exempt from scrutiny under the Sherman Act, this exception has no applicability to the claims at issue here, which arise under the Maryland Antitrust Act."  Opposition Brief at 29.  This response misconstrues a decision from this Court – affirmed by the Fourth Circuit – which held exactly the opposite.  *See* Opening Brief at 25-26 (citing *Baltimore Scrap Corp. v. The David J. Joseph Co.*, 81 F. Supp. 2d 602 (D. Md. 2000)).  Plaintiffs attempt to distinguish *Baltimore Scrap* because it addressed the *Noerr-Pennington* doctrine of antitrust liability, rather than the McCarran-Ferguson Act.  Opposition Brief at 31.

This is a distinction without a difference.  In *Baltimore Scrap*, this Court specifically held that "[b]ecause the defendants are immune from federal antitrust liability, they are likewise immune from liability under Maryland's antitrust statute, MD. CODE ANN. COM. LAW II § 11-204."  81 F. Supp. 2d at 620.  The Court reached this decision because actions under the Maryland Antitrust Act are construed in conjunction with federal antitrust statutes.  *Id.*; *see also Berlyn, Inc. v. Gazette Newspapers, Inc.*, 73 Fed. Appx. 576, 582 (4th Cir. 2003) (affirming dismissal of claims) (same).  Thus, the fact that *Baltimore Scrap* did not specifically address the McCarran-Ferguson Act is irrelevant, and this Court has held as much.  *Cf. Mikeron, Inc. v. Exxon Co., USA*, 264 F. Supp. 2d 268, 276 (D. Md. 2003) (citing *Baltimore Scrap* and dismissing

----

[10] The argument that plaintiffs "alleged damage to competition" (Opposition Brief at 27) necessarily fails, because they have not alleged any aspect of the competitive landscape at issue.

Maryland Antitrust Act claim where identical claim failed under the federal Robinson-Patman Act).[11]

**B.      Plaintiffs' Purported Common Law Claims Each Fail under Maryland Substantive Law**

**1.      Tortious Interference**

Plaintiffs' scant, one-page discussion of their intentional interference with economic relations ("IIER") claim just generally directs this Court to the FAC. *See* Opposition Brief at 32. However, the FAC neither pleads independently tortious conduct nor the requisite tortious intent on the part of any of the defendants, and thus the IIER claim cannot stand.

Plaintiffs do not dispute that they must plead "independently wrongful or unlawful" conduct – apart from the effect of the conduct on their business – to state an IIER claim under Maryland law. *See S. Volkswagon Inc. v. Centrix Fin, LLC,* 357 F. Supp. 2d 837, 851 (D. Md. 2005); *Baron Fin. Corp. v. Natanzon,* 471 F. Supp. 2d 535, 541 (D. Md. 2006); *ScanSource, Inc. v. Thurston Group, LLC,* No. 11-380, 2011 WL 1884775, at *5 (D. Md. May 18, 2011). Plaintiffs have not satisfied this essential element. Indeed, plaintiffs' allegations do not plausibly demonstrate that the IBC Defendants and CareFirst lacked a right to investigate plaintiffs' reimbursement claims under ERISA. These allegations similarly fail to show that the BCBSA lacked a right to conduct a fraud investigation into various entities specializing in Factor medication through its National Anti-Fraud Department.

In support of their vague assertion that the FAC as a whole sets forth independent tortious acts, plaintiffs rely on three decisions: *D.J. Diamond Imports, LLC v. Silverman Consultants,*

---

[11] Plaintiffs' related argument that defendants are not engaged in the "business of insurance" for purposes of McCarran-Ferguson fails for the same reason plaintiffs' claims are completely preempted by ERISA – plaintiffs conveniently ignore the multitude of allegations in the FAC demonstrating that this case is about the processing and administration of insurance claims.

*LLC,* No. 11-2027, 2012 WL 163231 (D. Md. Jan. 18, 2012); *Webb v. Green Tree Servicing,*

*LLC,* No. 11-2105, 2011 WL 6141464 (D. Md. Dec. 9, 2011); and *Williams v. Wicomico County*

*Bd. of Educ.,* No. 10-3582, 2011 WL 3022300 (D. Md. July 21, 2011).   Opposition Brief at 32-

33.  Each of these cases is inapposite.  For example, *D.J. Diamond Imports* did not even address

the question of whether the defendant's conduct rose to the "independently tortious" level.

Instead, *D.J. Diamond Imports* involved a claim in which the defendant allegedly interfered with

an existing contract between the plaintiff and a third-party, such that the contract was breached

by the third party.  2012 WL 163231 at *6-7.  The plaintiff specifically alleged that the

defendants used threats of physical intimidation to induce another's breach of contract.  *Id.* at *7.

The case did *not* involve a claim, like plaintiffs' claim here, for wrongful interference with a

business in the absence of an express breach of contract.  *See S. Volkswagon Inc.,* 357 F. Supp.

2d at 851 (differentiating the two different types of claims). As Maryland courts have explained,

the version of the tort that plaintiffs assert is narrowly construed:

> [T]he tort has two general manifestations, one where a third party
> intentionally interferes with an existing contract and induces a breach, the
> other where the third party maliciously or wrongfully infringes upon an
> economic relationship. These two manifestations differ in their tolerance
> for interference.  Where a contract between two parties exists, the
> circumstances in which a third party has a right to interfere with the
> performance of that contract are more narrowly restricted.  A broader right
> to interfere with economic relations exists where no contract or a contract
> terminable at will is involved.

*D.J. Diamond Imports*, 2012 WL 163231 at *6 (internal citations and quotations omitted).

        The second case cited by plaintiffs, *Webb, supra*, also involved a defendant's alleged

interference with an existing contract between the plaintiff and a third party.  *Id.* at *6-7.  *Webb*

did not address the issue of whether the plaintiff's conduct was independently tortious, either.  *Id.*

The last case cited by plaintiffs, *Williams, supra*, is cited for the proposition that defamation can,

in certain circumstances, serve as independent tortious conduct for the purpose of an IIER claim.

Opposition Brief at 33.  Here, however, plaintiffs' defamation claim (1) was not asserted against

the IBC Defendants, and (2) is time-barred as to CareFirst and the BCBSA.  In any event,

plaintiffs' allegations concerning the connection between the defamation and the decline in

Feldman's business are purely conclusory and should be rejected.  *See, e.g.,* FAC at ¶¶ 296, 301,

307, 309; *Tribalco, LLC v. Hue Tech., Inc.,* No. 11-935, 2011 WL 3821074, at *8 (D. Md. Aug.

26, 2011).

## 2.    "Unfair Competition"

Count IV of the FAC – purportedly a claim for "unfair competition" under Maryland

common law, should be dismissed with prejudice.  The allegations supporting this claim are

entirely dependent on the other claims asserted by plaintiffs.  *See* FAC at ¶¶ 329-38 (defendants'

alleged refusal to pay claims, tortious interference with clients, and defamation are the "unfair

methods" at issue).  Thus, as plaintiffs appear to concede (Opposition Brief at 33-34), if

plaintiffs' remaining claims are dismissed then Count IV also should be dismissed.  *See also S.

Volkswagen*, 357 F. Supp. 2d at 852-53 ("unfair competition" claim dismissed because, like the

plaintiffs' civil conspiracy and tortious interference claims, the claim was "tethered to the

[dismissed] antitrust claim"); *Cloverleaf Enters., Inc. v. Md. Thoroughbred Horsemen's Ass'n,

Inc.*, 730 F. Supp. 2d 451, 467 (D. Md. 2010) (cited in Opposition Brief at 34) (holding that the

plaintiff's "unfair competition" and antitrust claims would rise or fall together).

Plaintiffs also rely on the "residual" category of "unfair competition" referenced in the

RESTATEMENT (THIRD) OF UNFAIR COMPETITION § 1, and Maryland cases that have used broad

language to describe this tort.  Opposition Brief at 33-34.  This reliance is misplaced.  Although

some courts have repeated (without analysis) the mantra that any sort of "deceit", "trickery" or

"unfair methods" fall within the scope of this claim, "[t]he case law . . . is far more

circumscribed than such rhetoric might indicate. . . ." RESTATEMENT § 1, cmt. g.; *see also*

*Berlyn, Inc. v. Gazette Newspapers, Inc.*, 223 F. Supp. 2d 718, 739 (D. Md. 2002) (dismissing

"unfair competition" claim "in light of the Court's dismissal of all of the plaintiffs' antitrust

claims, *and the nearly exclusive historical application of this cause of action to trademark*

*cases*") (emphasis added), *aff'd*, 73 Fed. Appx. 576 (4th Cir. 2003).  As set forth above, plaintiffs

cannot rely on their purported antitrust claim here, which fails for independent reasons.[12]  Nor

have plaintiffs come forward with any authority demonstrating that their "unfair competition"

claim could survive absent support from the other torts that plaintiffs attempt – but fail – to

allege.  Thus, Count IV should be dismissed.

### 3.    Civil Conspiracy

Plaintiffs do not dispute that a civil conspiracy claim "is not a separate tort capable of

independently sustaining an award of damages in the absence of other tortious injury to the

plaintiff." *Alleco Inc. v. The Harry & Jeanette Weinberg Found.,* 665 A.2d 1038, 1045 (Md.

1995).  Instead, plaintiffs simply assert that they have stated valid tort claims, and thus their

conspiracy claim survives.  *See* Opposition Brief at 35.  For all the reasons set forth in

defendants' motions to dismiss and discussed *infra,* the FAC fails to state any independent tort

claims.  Accordingly, plaintiffs fail to state a conspiracy claim as well.

### C.    <u>Plaintiffs' Tort Claims Are Barred by the Applicable Statutes of Limitation</u>

Plaintiffs attempt to overcome defendants' challenge to their time-barred claims by

arguing: (1) the statutes of limitation for Counts I, III and IV did not start running until PMA sold

---

[12] Indeed, some courts have "require[d] proof that the complainant and defendants are competitors in a relevant market" "in order to make out a claim for common law unfair competition." *Envtl. Tectonics Corp. v. Walt Disney World Co.*, No. 05-6412, 2008 U.S. Dist. LEXIS 24832, at *61-62 (E.D. Pa. Mar. 26, 2008) (discussing the "residual" rule of liability under the RESTATEMENT § 1).  Plaintiffs have not properly pleaded either the geographic or product markets allegedly at issue.

Feldman's; (2) Count II (defamation) must survive because the FAC itself does not contain allegations that establish the defense; and (3) Claim V (conspiracy) is not barred by the statute of limitations.  Opposition Brief at 36-38.  None of these arguments saves plaintiffs' time-barred claims from dismissal.

> **1.     The Statutes of Limitation Started Running in 2008 on Claims I, II and IV of the FAC**

By no later than the end of October 2008, Feldman's allegedly experienced a dramatic increase in receivables, supposedly as a result of defendants' actions.  CareFirst Brief at 11.  Under Maryland law, the statute of limitations starts to run "when a plaintiff has knowledge of circumstances indicating that he may have been harmed…."  *Russo v. Ascher*, 545 A.2d 714, 716-17 (Md. Ct. Spec. App. 1988).  The statute starts running even if the plaintiff does not know "the precise amount of damages at the time of discovery of the wrong…."  *Am. Home Assurance Co. v. Osbourn*, 422 A.2d 8, 16 (Md. Ct. Spec. App. 1980).  Indeed, the discovery of "'trivial injuries'" is enough to trigger the limitations period.  *Mattingly v. Hopkins*, 253 A.2d 904, 908 (Md. 1969) (*quoting S. Md. Oil Co. v. Tex. Co.*, 203 F. Supp. 499, 452 (D. Md. 1962)).

Plaintiffs ignore Maryland law on this point and instead argue that "the damage to Plaintiffs were [*sic*] not present until PMA sold Feldman's assets at a loss in 2009[.]"  Opposition Brief at 37.  However, by December 2009, Feldman's already had sued CareFirst and the IBC Defendants for damages allegedly incurred by Feldman's at least as far back as 2008.[13]  In essence, plaintiffs argue that the statute of limitations should not start running until *all* of their damages *have fully matured*.  "[T]he so-called 'maturation of harm' rule" is not Maryland law.

---

[13] *See* CareFirst Brief at 4, 11.  Moreover, on September 9, 2009, Feldman's alleged that more than 55% of the allegedly $2.2 million in outstanding claims had been "outstanding and *unpaid for more than one year*."  Opening Brief, Exhibit C (Original Templin Complaint), at ¶ 22 (emphasis original).

*Smith v. Sherwood*, 308 F. Supp. 895, 898-99 (D. Md. 1970); *see also Mattingly*, 253 A.2d at 908; *Edwards v. Demedis*, 703 A.2d 240, 246 (Md. Ct. Spec. App. 1997) (explaining that Maryland's discovery rule "is clearly distinguishable from the maturation of harm rule applied in some jurisdictions" and that under the Maryland discovery rule, "a precise of amount of damages need not be known" before the statute of limitations starts running).

As pointed out in *Mattingly*, *supra*, the limitations period begins to run once a plaintiff first could have maintained an action. 253 A.2d at 908 (plaintiff "had sustained damages when [he] discovered the faulty survey" given that at that point "he certainly could have maintained an action to recover expenses…."). The fact that Feldman's sued (1) CareFirst in June of 2009 and (2) IBC, QCC and CareFirst in August 2009 is an admission that Feldman's allegedly suffered damages long before its assets were sold in December 2009. Thus, the Court should disregard plaintiffs' self-serving arguments that they suffered no damages until December 2009.

## 2. Plaintiffs Have Only a Speculative Chance of Overcoming Defendants' Limitations Defense to Plaintiffs' Defamation Claim

Plaintiffs must do more than raise the *speculative possibility* of a valid claim to overcome defendants' Rule 12(b)(6) motions. *See, e.g.,* CareFirst Brief at 6. Plaintiffs make three points in their efforts to save their defamation claim, each of which fails. First, they cite to cases for the proposition that the statute of limitations did not start running when "the plaintiff did not know and reasonably should not have known that the defendant had made [defamatory] statements." Opposition Brief at 37-38 (citations omitted). Such holdings have no bearing on this case. Here, Feldman's took months of discovery in the Maryland Action, including the depositions of the individuals who allegedly made the defamatory statements. This discovery ended December 22, 2010, more than one year before the instant action was filed.

Plaintiffs' second point is that defendants "cannot point to a single allegation in the FAC which establishes that Plaintiffs knew, or should have known, about their defamatory conduct, on or before December 29, 2010." Opposition Brief at 38. That is beside the point. The allegations of the FAC, taken together with the other evidence the Court properly may consider at this stage (CareFirst Brief at 3 n.1), establish that plaintiffs knew or should have known about the allegedly defamatory statements more than one year before filing the instant case.

Finally, plaintiffs rely on *Fischer v. Viacom Int'l, Inc.*, 115 F. Supp. 2d 535, 539 (D. Md. 2000), to argue that "a motion to dismiss should be denied" if plaintiff contests "when the statute of limitations begins to run[.]" Opposition Brief at 38. What the *Fischer* Court actually held is that a motion to dismiss should not be granted when "it is far from clear that [plaintiff] had knowledge of circumstances that would have put him on inquiry notice concerning" the claims. 115 F. Supp. 2d at 539. As such, *Fischer* is inapposite. Moreover, and in any event, *Fischer* was decided prior to the Supreme Court's *Twombly* and *Iqbal* decisions.

Plaintiffs ask this Court to speculate that the one-year limitations period on their defamation claim has not run, despite the fact that Feldman's participated in full-blown discovery in a case based on the exact same set of facts – which included the depositions of all of the alleged defamers – and which closed on December 22, 2010. Mere speculation cannot rescue a claim from dismissal under the Rule 12(b)(6) standard, however.

### 3. Plaintiffs' Conspiracy Claim Is Barred by the Statutes of Limitation that Govern the Underlying Torts

Plaintiffs do not, and cannot, challenge the fact that under Maryland law, if an underlying claim fails as a matter of law a related conspiracy claim cannot otherwise survive on its own. *See* Opening Brief at 21-26. Plaintiffs also do not dispute that under Maryland law, when the underlying claims are barred by the statute of limitations, so too is any derivative conspiracy

21

claim.  *See Prince George's Cty. v. Longtin*, 19 A.3d 859, 877 (Md. 2011).  As explained in

*Longtin*, "[c]ivil conspiracy claims [] share a statute of limitations with the underlying tort."  *Id.*

This means that the conspiracy "claims [] share an accrual date for limitations purposes with" the

underlying claims.  *Id.*  Plaintiffs' conspiracy claim cannot evade defendants' limitations defense

that is fatal to plaintiffs' underlying tort claims.

## IV.   <u>CONCLUSION</u>

For each of the foregoing reasons, and those in defendants' respective opening briefs,[14]

plaintiffs' FAC should be dismissed in its entirety with prejudice.

---

[14] Memorandum of Law in Support of the IBC Defendants' Motion to Dismiss Plaintiffs' First Amended Complaint (D.E. 8-1); Memorandum of Law in Support of Defendant CareFirst, Inc.'s Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6) (D.E. 9-1); Defendant Blue Cross Blue Shield Association's Memorandum of Law in Support of its Motion to Dismiss Plaintiffs' First Amended Complaint (D.E. 36-1).

Respectfully submitted,

/s/ Elisabeth S. Walden                       /s/ Patrick P. de Gravelles (w/p)
Elisabeth S. Walden (Bar No. 28684)          Patrick P. de Gravelles (Bar No. 29245)
AKIN GUMP STRAUSS HAUER & FELD LLP           CareFirst BlueCross BlueShield
Robert S. Strauss Building                   Litigation General Counsel
1333 New Hampshire Ave., NW                   840 First St., NE, DC12-08
Washington, D.C. 20036                        Washington, D.C. 20065
Phone: (202) 887-4000                         Phone: (202) 680-7457
Fax: (202) 887-4526                           Fax: (202) 680-7620
&
David L. Comerford (admitted *pro hac vice*)   *Counsel for CareFirst, Inc.*
Katherine M. Katchen (admitted *pro hac vice*)
Matthew R. Varzally (admitted *pro hac vice*)
AKIN GUMP STRAUSS HAUER & FELD LLP
Two Commerce Square
2001 Market Street, Suite 4100
Philadelphia, PA 19103
Phone: (215) 965-1200
Fax: (215) 965-1210

*Counsel for Independence Blue Cross and*
*QCC Insurance Company*


/s/ Jorge V. Cazares (w/p)
Stephen H. Pugh (admitted *pro hac vice*)
Jorge V. Cazares (admitted *pro hac vice*)
Rebecca D. Fuentes (admitted *pro hac vice*)
PUGH, JONES & JOHNSON, P.C.
180 N. LaSalle Street, 34th Floor
Chicago, IL 60601
Phone: (312) 768-7800
Fax: (312) 768-7801

*Counsel for the Blue Cross Blue Shield*
*Association*


Dated: May 25, 2012

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 25, 2012, a true and correct copy of **Defendants' Joint**

**Reply Brief in Support of their Motions to Dismiss Plaintiffs' First Amended Complaint**

was filed and served upon counsel of record for the parties via the Court's ECF system, as well

as served separately by First-Class and electronic mail.

/s/ Elisabeth S. Walden
Elisabeth S. Walden